# Batdorff *versus* The Farmers' National Bank of Reading.

1. If a deposition be evidence for any purpose, as against a general objection, it is admissible.

2. In a question of fraud against creditors, great latitude of investigation is allowed, and where there was evidence of partnership, declarations of one of the partners several years previously were admissible.

3. A suit was brought against B., C. and A. as partners under the name of C. & A. B. denied that he was partner. Evidence was admissible that a witness for the plaintiff was a creditor of the firm, to show that he had an interest in the question.

4. The property of the firm of C. & A. had been struck down at sheriff's sale to H., and afterwards conveyed by him to B., the allegation being that it was bought for the firm, and that B. was a secret partner. Evidence was admissible that H. bought for himself without any arrangement with B., C. or A.

5. A party on an examination in chief of his witness gave evidence of facts which were immaterial. *Held*, that the witness might be contradicted by the other party as to those facts.

6. In a suit by a creditor of a firm in which the partnership of one of the partners was denied, it was not competent to prove a combination of two admitted partners to suborn witnesses, &c., against the third, unless there

[Batdorff *v.* Farmers' National Bank of Reading.]

was some, evidence that the plaintiff had something to do with the combination.

7. The judge charged, " There is other evidence given by the defendant which we would have rejected if it had been objected to," but did not point out what the evidence was. *Held* to be error.

February 19th and March 4th 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the District Court of *Philadelphia:* No. 251, to January Term 1869.

This was an action of assumpsit, brought May 29th 1867, by The Farmers' National Bank of Reading against C. A. Seltzer, Augustus M. Seltzer and Zacharias Batdorff, trading as C. A. & A. M. Seltzer. The suit was on three notes made by C. A. & A. M. Seltzer, dated in December 1860 and May 1861, amount· ing in the whole to $1252.89. The question in the case was whether Batdorff was a partner in that firm.

The plaintiffs, after giving the notes in evidence, offered the deposition of James L. Nutting, in which the witness testified that Batdorff went into the foundry business in Fremont, Schuylkill county, about 1860 or 1861. He had three or four years previously been in other business, had failed and been sold out by the sheriff, and his property bought in by the Seltzers. When in the foundry business he signed as agent for the Seltzers; they were afterwards sold out by the sheriff under a judgment in favor of Batdorff; most of the property was bought in by him at low prices, the Seltzers and Batdorff saying that it was to save the property from debts for which the firm was liable as security, and in order that they might be able to pay their real creditors. By reason of their assurance to witness, who was a creditor of the firm, and to other creditors, they were induced not to bid against Batdorff. The foregoing was noted on the deposition as objected to whilst it was being taken. There was in it other evidence, not then objected to, for the purpose of showing that Batdorff was a partner. The admission of the deposition was objected ⸰to by Batdorff as to any evidence relating to the sheriff's sales of the property of Batdorff and C. A. & A. M. Seltzer, and to the parts mentioned as having been noted on the deposition. The whole deposition was received and a bill of exceptions sealed.

The plaintiff then offered to prove by H. Reichenbach a conversation, in 1855 or 1856, between witness and Batdorff, in relation to his connection with the firm of C. A. & A. M. Seltzer. Batdorff objected to the offer; it was admitted, and a bill of exceptions sealed. Witness testified that Batdorff at that time told him he was a secret partner in the firm. The plaintiff then gave much evidence for the purpose of showing that Batdorff was a partner.

The plaintiff examined Mrs. Ella Sallada, a sister of the Seltzers, to the point of partnership. In her examination in chief

[Batdorff *v.* Farmers' National Bank of Reading.]

she stated, amongst other things, that her brothers owed her money which she had given them after their failure; and on cross-examination in relation to the money, that a house in Reading had been bought for her with money received by her from her father's estate. Israel Sallada testified for the plaintiff. Batdorff, on cross-examination, proposed to ask the witness if he was a creditor of C. A. & A. M. Seltzer, as introductory to a further question, to show that the witness had an interest in the question in controversy by securing his claim through making Batdorff liable for the Seltzers' debts. On objection by the plaintiff, the court refused to allow the question to be asked, and sealed a bill of exceptions.

The plaintiff having closed, Batdorff proposed to prove by Augustus Huber that the witness had purchased the property of the Seltzers at sheriff's sale in his own right without any previous arrangement with Batdorff or the Seltzers; that he afterwards sold the property to Batdorff. The offer was rejected, and a bill of exceptions sealed. He further proposed to prove that Mrs. Sallada had not money to loan to her brothers or to pay for the house in Reading. The offer was rejected, and a bill of exceptions sealed. He also proposed to prove by E. L. Pinkerton and others and by letters of the Seltzers that this and other suits had been brought at the instigation of the Seltzers, that they had offered to suborn witnesses and endeavored to induce them by promises of property, &c., to swear falsely that they had heard Batdorff say he was a partner and that the plaintiff brought this suit after the conspiracy was formed and in consequence of it. The offer was rejected, and a bill of exceptions sealed. The defendant Batdorff gave other evidence for the purpose of disproving the partnership.

The court (Stroud, J.), amongst other things, charged, "there was other evidence given by the defendant, which, if it had been objected to, would have been rejected, but the jury might take into consideration everything that had been received in evidence, and give to it whatever weight they might find it to possess."

The verdict was for the plaintiff for $1794.76.

Batdorff took a writ of error, and assigned the following errors: viz., that the court erred,

1. In admitting the whole deposition of Nutting.

2. In admitting evidence relating to the first sheriff's sale of Batdorff's property.

3. In admitting any evidence affecting the second sheriff's sale of that being the Seltzers' property.

4. In admitting the testimony of Reichenbach of conversations with Batdorff in 1855 and 1856.

5. In rejecting evidence that I. Sallada, a witness for plaintiff,

[Batdorff *v.* Farmers' National Bank of Reading.]

was a creditor of the Seltzers for the purpose of showing the interest of witness in the question in controversy.

6. In rejecting evidence that Huber bought the property of the Seltzers at sheriff's sale for himself without any arrangement with Batdorff or the Seltzers.

7. In rejecting evidence to contradict Mrs. Sallada.

10. In rejecting evidence to show that this suit and others were instituted at the instance of the Seltzers, that they tried to suborn witnesses, &c.

12. In the portion of the charge stated above.

*T. R. Elcock* (with whom were *T. Cuyler* and *F. W. Hughes*), for plaintiff in error, cited as to the first three specifications, Whitney *v.* Ferris, 10 Johnson 66; Tuttle *v.* Cooper, 5 Pick. 414; Jennings *v.* Ester, 16 Maine 323; Nelson *v.* Lloyd, 9 Watts 22; McPherson *v.* Rathbone, 7 Wend. 216; Collyer on Partnership, § 776; Lenhart *v.* Allen, 8 Casey 312. As to the 4th, 3 Phillips on Ev. 435; Cooper *v.* Dedrich, 22 Barb. 516. As to the 7th, 2 Phillips on Ev. 905; Patchum *v.* Ins. Co., 3 Kernan N. Y. 268. As to the 10th, Balt. & Ohio Railroad *v.* Hoge, 10 Casey 214. As to the 11th, Nieman *v.* Ward, 1 W. & S. 82; Parker *v.* Donaldson, 6 Id. 132; Selin *v.* Snider, 11 S. & R. 319; Relf *v.* Rupp, 3 W. & S. 21.

*R. P. White* and *Daniel Dougherty*, for defendant in error.

The opinion of the court was delivered, May 11th 1869, by

THOMPSON, C. J.—The exceptions to the admission in evidence of the deposition of James L. Nutting, are, so far as anything has been disclosed, all unfounded. The first was general, to the entire deposition. Portions of it were unquestionably testimony, and this would overrule the general objection. If it were evidence for any purpose, as against a general objection, it was admissible. The 2d and 3d exceptions to it, of which the specifications of error are predicated, need not be considered. These assignments of error are totally irregular, and I may add, are without merit, if we at all comprehend them. In view of the nature of the testimony, there was nothing wrong in admitting evidence of the relation existing between the defendant and the Seltzers, as far back as proposed. It might be a means of explaining their relation at a later period. The investigation involved questions of fraud by the defendants and the Seltzers, against creditors, and in such cases great latitude of investigation is allowable. There is no error in the particulars complained of so far. The 5th assignment is not so easily disposed of. It is predicated of a refusal to permit the witness, Sallada, to be asked the following question on cross-examination,—"Are you a creditor of C. A. & A. M.

Seltzer ?" The counsel proposed to follow it, if answered as they expected, with another, "to show that the witness had an interest in the question in controversy, in securing his claim, through making Batdorff liable for Seltzer's debts." The proposition was to show a state of facts from which a jury might be justifiable in inferring a bias in the mind of the witness against the defendant, and therefore to affect his credit. To show bias on behalf of the witness was the right of the defendant, if he could. In Cameron *v.* Montgomery, 13 S. & R. 128, it was held that the party against whom a witness has testified, may show anything which might in the slightest degree affect his credit, and the judgment in that case was reversed, because the court below refused to allow the witness to be asked, "whether the plaintiff did not buy (the witness's) property at his (the witness's) instance." "It was a circumstance," said Tilghman, C. J., "which might show that the witness was under obligation to him, and this might have had some effect on his evidence, by exhibiting a bias." We cited and approved this rule in Ott *v.* Heighton, 6 Casey 451, and reversed in that case because it had been disregarded on the trial below. If the witness had himself a claim against the Seltzers, and was called to sustain a claim by a creditor, which was to be secured only by making Batdorff a partner with them, was it not possible, nay, likely, that he might feel a bias for a result which he might suppose would strengthen the probability of success in his own case? It was proper to let the jury consider this in weighing his testimony, and this could be done only by asking the question. It should have been allowed, therefore, and if it disclosed an interest in the question, it would be for the jury to say whether that had any influence to bias, or color his testimony, or not. They would credit him fully or not, just as they would consider him clear of bias or otherwise, in giving testimony. The rules of evidence are the results of experience, and it is best to stand reasonably strictly by them. It is not easy to say how a voyage may end, if the departure is on a wrong course. This error we think sustained.

We are also of opinion that there was error in overruling the offer which constitutes the 6th assignment. As we understand it, it was material, in answer to the plaintiff's testimony, tending to show, that after the sheriff's sale of the machinery of the Seltzers in 1861, and purchase by Batdorff, that the business was carried on for the joint benefit of the Seltzers and Batdorff. The offer was to show that the real estate of the Seltzers, including the foundry and machine-shop, was sold on execution in 1862 to the witness Huber, and that he purchased for himself, and afterwards sold and conveyed to Batdorff. It was some evidence at least, on the question, whether the foundry and machine-shop, being the individual property, if it were so, did not tend to negative the idea of

[Batdorff *v.* Farmers' National Bank of Reading.]

a partnership with the Seltzers, carried on in them. Unexplained it would convey that idea; at least, the defendant had a right to insist on the inference from it in support of his position that he was not a partner, but carrying on business for himself. Whether it would have weight or not in support of the defendant's position, is not the question with us. It was relevant testimony, and should have been admitted, and that is all we have any concern with. A controverted fact can only be satisfactorily ascertained and determined upon, after hearing all proper testimony offered on both sides. We think this error is sustained.

The 7th assignment of error was in rejecting the offer to contradict Mrs. Sallada, in regard to several matters stated by her in testifying for the plaintiff. These matters were proved by the plaintiff, and it was undoubtedly the right of the defendant to disprove them if he could, or as far as he could. If a witness fabricate a story with circumstances, the disproof of the circumstances is generally the only possible way of disproving the material facts. The plaintiff thought proper to prove by Mrs. Sallada, that she lent money to her brothers, the Seltzers, amounting to several thousand dollars, and that she bought and paid for a house in Reading out of her own means. At this distance from the scene of controversy we are not able to see the relevancy of these facts, but we are to presume that the plaintiff did, and called them out from this witness. When, therefore, the defendant proposed to prove that some of these things stated by the witness as facts were untrue, had no existence, with a view to contradict her, it was not the plaintiff's privilege to claim its exclusion on the ground of immateriality. He gave the fact in evidence and opened the way for its disproof in order to discredit the witness. The offer, undoubtedly, amounted to a contradiction, by proving facts tending to show the inability of Mrs. Sallada to lend the money or buy the house. We think the testimony should have been received. We see nothing requiring notice in the next two assignments of error, being the 8th and 9th. As to the 10th, we have only to say the offer was rightly rejected if the plaintiff had nothing to do with the combination alleged between the Seltzers and others to fix liability on Batdorff as a partner with them. Nothing like this was shown, so far as we can discover, and the testimony was properly refused.

The 11th assignment of error is so utterly in disregard of the rules of the court that we will not notice it. The 12th and last assignment is to the charge of the learned judge, in saying, "that there was other evidence given by the defendant, that he would have rejected, if it had been objected to," without defining the parts of the evidence that he would so have rejected. We think this was an error, and was not cured by the remark which followed, "that the jury might take into consideration everything that had

[Batdorff *v.* Farmers' National Bank of Reading.]

been received in evidence, and give it whatever weight they might find it to possess." The jury would certainly understand from the remark, that at least some portion of the testimony was improperly before them, and as there was no designation of the part, they would be as liable to apply the remark to one portion of the testimony as another, and thus the whole come to be looked upon with doubt and distrust. Important and relevant portions might as readily be supposed to be the parts alluded to, as that which might have been in the judge's mind at the time. In this way the defendant's testimony might be literally set aside, without the chance of an exception to the court's opinion in reference to any of it. We fear the qualifying remark which we have referred to may have had but little effect upon the jury. They would not be likely to regard the testimony as of much weight with an indefinite condemnation of portions of it, without knowing what portions were intended by the court. We do not say that it had any prejudicial effect upon the defendant's case, but it may have had, and he was not bound to stand the risk of it. For these reasons we are constrained to sustain this error.

The judgment is reversed, and a *venire de novo* is awarded.