PAGE v. THOMAS.

No. 2636.

Court of Civil Appeals of Texas. El Paso.
Feb. 25, 1932.

Rehearing Denied March 24, 1932.

G. W. Dunaway, of Midland, and Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, for appellant.

Haag & Stubbeman, of Midland, for appellee.

HIGGINS, J.

On December 27, 1929, a collision occurred between a motorbus owned and operated in stage service by appellant, and a Ford car occupied by Barney B. Hines, his wife, and four children. The occupants of the Ford car were seriously injured and were taken by the driver of the bus to a hospital in Midland owned and operated by appellee. This is a suit by appellee against appellant to recover the reasonable value of necessary hospital accommodation, surgical and medical services rendered to the injured persons. It was alleged that such accommodation and service was rendered at the request of appellant and upon his promise to pay therefor. It was contended by appellant that he obligated himself to pay only for emergency hospital accommodation and emergency surgical and medical attention to the injured persons.

Upon special issues, findings were made in favor of appellee and $800 awarded as the reasonable value of the accommodations and services rendered, for which amount judgment was rendered.

Complaint is first made of the overruling of appellant's plea of privilege to be sued in Taylor county where he resides. With respect to this matter the record discloses the suit was filed and due service had upon appellant January 19, 1931, returnable to the term of the court beginning February 2, 1931. When served appellant was seriously ill. He defaulted, and on February 3, 1931, default judgment was rendered against him. On February 16th he filed a motion to set aside the judgment and to quash the citation. On February 23d the court set aside the default judgment and the cause "reinstated on the docket of this Court for trial." At that time about another week remained of the February term, but the cause was continued for the term. On April 18 the plea of privilege was filed to which appellee filed a verified answer setting up waiver of the privilege then asserted by appellant. The attorney for appellee testified:

"At the time defendant's motion to set aside default judgment was heard on or about February 23, 1931, the matter of a plea of privilege was discussed between counsel for defendant and counsel for plaintiff in the presence of the Court and counsel for defendant indicated that no plea of privilege would later be offered. * * *

"Relying upon the impression which defendant's counsel left with plaintiff's counsel, plaintiff didn't urge that the case be retried at the February term of court, but was willing that the case be continued over to the next term of court in accordance with suggestion made by defendant's counsel. That is all."

Questioned by the court, counsel who represented appellant upon the motion to set aside the default judgment testified: "Q. Do you recall me asking about that? I asked what you wanted to do with the case at that term and you answered to let it go over and give them time to get ready, or something like that? A. A conversation like that probably took place."

█ In this connection appellant refers to cases where default judgments were set aside and it was held that pleas of privilege filed to succeeding terms were timely. But these were cases where the judgments had been rendered upon faulty service and for this reason are not in point. The fact that appellant was ill at the time he was served did not invalidate the service. The default judgment here was evidently set aside upon equitable grounds and the service was not quashed. Under the circumstances it was incumbent upon appellant to immediately file his plea when the judgment was set aside and invoke action thereon at that term. He not only failed to do so, but, by his counsel, sought to obtain a continuance for the term, and impliedly and perhaps expressly waived the privilege which he later sought to claim.

Under these circumstances the court properly overruled the plea of privilege. Thomas v. Ellison (Tex. Civ. App.) 110 S. W. 934; Swift & Co. v. Duckett (Tex. Civ. App.) 13 S. W.(2d) 237; and other cases cited in 17 Michie Digest, 117.

Error is assigned to the overruling of an application for continuance because of the absence of appellant's witness Elmer G. Gunn, who resided at Lubbock, Tex.

The application states it was expected to prove by Gunn: That not later than December 29, 1929, he investigated the accident and advised defendant there was no liability therefor on defendant's part, detailing the reasons which fixed responsibility for the accident on the driver of the Ford car; that he then, for defendant, notified plaintiff in person that defendant would not stand for any treatment or hospitalization thereafter and plaintiff would have to look to some one else for payment except for the emergency treatment and accommodation.

In stating the diligence used to obtain the attendance of Gunn and excusing the failure to take his deposition, it was averred: "That the said Elmer G. Gunn is an employee of American Fidelity and Casualty Company, which company was carrying liability insurance for this defendant at the time of the accident and is subject to the orders of said company and said company has the authority to direct him to appear as a witness in this case. That said American Fidelity and

Casualty Company, a number of weeks ago, notified the said Elmer G. Gunn to appear as a witness in the trial of this case and instructed this defendant to telephone him at Lubbock, Texas, and have him present as a witness at the trial of the case."

It then set up that Gunn went to Santa Fé, N. M., before the casualty company was notified of the setting of the case and they were unable to get in touch with him and secure his attendance at the trial.

In brief, Gunn's testimony would have been to the effect:

1. That the driver of the Ford car was attempting to pass another car and in so doing got on the wrong side of the road and thus caused the accident.

█ It is obvious this is irrelevant to the issue of whether appellant bound himself to plaintiff at the time the injured persons were received and accepted by plaintiff for treatment and hospitalization.

█ 2. That about two days after the patients were received at the hospital, the witness, in behalf of defendant, undertook to limit the original contract so as to relieve defendant from liability for future charges. This he could not do unless assented to by the plaintiff. 13 C. J. 604, § 629; St. Barnabas Hospital v. Minneapolis, etc., 68 Minn. 254, 70 N. W. 1126, 1127, 40 L. R. A. 388. In the course of the opinion in the case cited, it was said: "The contention of the plaintiff, and the view of the law on which the court submitted the case to the jury, was that under the circumstances the agreement was not one which the defendant had an absolute right to terminate at any time merely by giving notice; that defendant, having brought a seriously injured man to the hospital, and the plaintiff having taken him in and accepted him as a patient at the request of defendant, and on the faith of its promise to pay, it would remain liable, notwithstanding notice to the contrary, until it removed him, or until he sufficiently recovered, so that he could have been dismissed or put out of the hospital without great danger to his health or life, unless it appeared that he had means of his own out of which plaintiff could have collected its pay. This was an implied condition, upon which the contract could be terminated. It is in accord alike with common sense and the dictates of humanity. The plaintiff, having taken in a helpless and severely injured man at the defendant's request, and upon its promise to pay for an indefinite time, it would be monstrous if the defendant could, the very next day, summarily withdraw its promise, leave the sick man on plaintiff's hands, and put it to the alternative of either keeping and caring for him without pay, or else cruelly and inhumanly throwing him into the street."

In our opinion the ruling in that case is sound and applies to the present case.

It thus follows Gunn's proposed testimony was all immaterial and the continuance properly denied.

While plaintiff was being cross-examined by counsel for defendant, he testified: "I did receive this letter, which you have just handed to me. This was written the 29th, after the claim agent arrived on the job. They wrote me the letter and after the claim agent from the insurance company arrived on the job they wrote that letter '(indicating)."

Defendant offered in evidence letter referred to by the plaintiff, same being dated December 29, 1929, and which reads as follows:

"Page Way Stage Lines
"Geo. W. Page, Owner
"Big Spring, Texas.

"December 29, 1929.

"Dr. J. B. Thomas,
"Midland, Texas;
"Dear Sir:

"On the 27th we authorized you to render medical aid and administer to the parties who were injured in an accident with one of our buses this side of Midland. We did this purely as a humanitarian act and as an emergency relief to Mr. Hines and family, but since there is no liability whatever in the accident, and since we have rendered all possible aid to these people, we respectfully ask that you do not hold us for any further expense in treating these people.

"We only gave you instructions to treat them as an emergency relief and we are not admitting any liability for the wreck, in fact we deny there was any negligence whatever on our part or the part of the driver. Therefore on receipt of this letter you are instructed to look to the parties for your charges. Thanking you for the services rendered, We are,

"Yours Very Truly,    H. T. Page
"HTP                 Page Way Stage Lines."

To that portion of the plaintiff's testimony that the letter was written after the claim agent for the insurance company arrived on the job the defendant excepted.

The bill shows:

"Dr. John B. Thomas, being on cross-examination, testified as follows:

"Q. You did receive that letter (referring to defendant's Exhibit 'A,' copied on page 7 of S. F.)? A. Yes. This was written the 29th, after the claim agent arrived on the job. They wrote me the letter and after the claim agent from the insurance company arrived on the job they wrote that letter.

"Mr. Harwell: Object to that. I have him on cross examination. It is an inflammatory and voluntary statement.

"Court: Overruled. Defendant excepts."

█ The letter referred to in the bill is the one above quoted. The objection made was well taken because the reference to the claim agent of the insurance company was voluntary and related to a matter it is ordinarily improper to call to the attention of the jury. Levinski v. Cooper et al. (Tex. Civ. App.) 142 S. W. 959; Gose v. Ballard (Tex. Civ. App.) 12 S.W.(2d) 1067; Hussmann v. Leavell & Sherman (Tex. Civ. App.) 20 S.W.(2d) 829; Lange v. Lawrence (Tex. Civ. App.) 259 S. W. 261.

But for the reason later stated the error is harmless.

The defendant called as a witness his brother H. T. Page, who was connected with and had an interest in the Page Way Stage Line which operated the bus involved in the collision. On direct examination H. T. Page testified: "Upon investigation we found there was no liability on our part and that was the 28th, and on the 28th I wrote Thomas a letter and told him we would pay the bill up to that point and that he would have to look to the parties after that time for payment. We did that purely as a humanitarian act. It was our policy to do that in every accident until we found we were liable and, of course, we couldn't do that if we weren't."

On cross-examination with reference to the letter quoted above and written by him, he testified: "It is not a fact that the first time anything was said about our liability being limited to emergency treatment and that act being a humanitarian act was after the insurance adjuster came out here. No, sir, that is not a fact. The insurance adjuster did not get after we fellows for assuming this liability; he did not get after us for not assuming more than—(interrupted) He did not dictate this letter at that time. He didn't tell us what was right. I wrote the letter myself. I did not write this letter saying we did this purely as a humanitarian act, as an emergency relief, making our defense then. That has been our policy all the time to pay for emergency treatment. We weren't trying to withdraw the obligation which we contracted with Thomas to pay."

The bill of exception shows:

"H. T. Page being upon the witness stand and under cross examination testified as follows:

"Q. And the first time that anything was said about your liability being limited to emergency treatment and that act being a humanitarian act was after the insurance adjuster came out here?

"Object to an insurance adjuster and now request the Court to retire the jury and call it a mistrial of this case.

"Court: Overruled. Defendant excepts.

"Q. Isn't that a fact? A. No, sir.

"Q. An insurance adjuster did come out here, didn't he?

"Mr. Harwell: Our objection goes to all this testimony about an insurance adjuster.

"Court: Overruled.

"Harwell: We again ask the court to retire the jury and call it a mistrial.

"Court: Overruled. Defendant excepts.

"Q. He got after you fellows for assuming this liability didn't he? A. No, sir, he didn't get after us for not assuming more than—(interrupted)—

"Q. Didn't he at that time dictate this letter? A. He didn't.

"Mr. Harwell: We object to all this.

"Q. Told you what was right. A. He didn't. I wrote the letter myself."

Error is assigned to the questioning concerning the insurance adjuster. The cases cited above establish that ordinarily it is reversible error to call to the attention of the jury matters from which it may be inferred the defendant is protected by insurance.

██ But in this case H. T. Page was interested as an owner in the stage line. He wrote the letter above quoted. The application for continuance and the date of the letter shows the letter was written immediately after the insurance adjuster Gunn had advised defendants they were not liable. There is a suspicious connection between the investigation and advice of the adjuster and the letter. Upon cross-examination of a party or interested witness a wide latitude is allowed and under the circumstances the cross-examination was legitimate and proper. Evansich v. Ry. Co., 61 Tex. 24; Pecos & N. T. Ry. Co. v. Coffman, 56 Tex. Civ. App. 472, 121 S. W. 218, 219.

The reference to the insurance adjuster having been thus properly made upon the cross-examination of the witness Page, renders harmless the previous reference to such adjuster by the plaintiff while he was under cross-examination by defendant.

There are a number of other assignments complaining of rulings upon evidence. None of them present any error and call for no discussion.

Affirmed.