Kaplan et al., Appellants, *v*. Loev.

Argued April 23, 1937; reargued May 20, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

466

*Robert M. Bernstein,* with him *Milford J. Meyer,* for appellants.

*Layton M. Schoch,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, October 8, 1937:

The court below sustained objections to certain questions proposed to be put to two of defendant's witnesses by plaintiffs' attorney in cross-examining them. The trial resulted in a verdict and judgment for defendant. These appeals are by plaintiffs, who assign as error the refusal of the court to allow the questions.

The details of the collision between the automobile in which plaintiffs were riding and defendant's automobile which give rise to the suit need not be stated. It is sufficient to say that defendant claimed he was not negligent and the witnesses to whom the questions were proposed to be propounded, husband and wife, were guests in defendant's car and their testimony went to establish that fact.

The questions proposed to be asked are these:

1. Whether the witnesses had made a claim for damages to defendant by reason of injuries he or she received in the accident.

2. Whether the witnesses had signed a release to defendant, releasing him from all claims for such injuries.

3. Whether the witnesses had received from defendant a sum of money in compensation for such injuries.

It is argued by appellants' attorney that these questions were proper for the purpose of attacking the credibility of the witnesses or to show bias.

From the opinion of the court below we learn that it was stated, in a side bar conference between counsel on both sides and the trial judge, that the witnesses had never brought suit against defendant, and had never made any statement in writing, or orally, indicating that he had been negligent, but that small settlements had been made with them by an insurance company on defendant's behalf. It is manifest that to permit the witnesses to answer the questions, and to tell the whole truth about the transaction, as they under their oaths were required to do, would be to lay before the jury the fact that defendant was protected by insurance, something which we have said must not be brought out upon the trial: *Hollis v. United States Glass Co.*, 220 Pa. 49, 69 A. 55; *Brown v. Scranton*, 231 Pa. 593, 80 A. 1113; *Curran v. Lorch*, 243 Pa. 247, 90 A. 62. That the attempt to get this information before the jury was by questions which were adroit, and not in themselves revealing of the forbidden fact, can make no difference so far as the propriety of the court's ruling is concerned. While the right of cross-examination cannot be denied by the trial judge where fairly conducted, he has the undoubted right to control and even to deny it where manifestly it is being used for the purpose of getting before the jury facts forbidden by the law to be divulged.

We are not unmindful of the general principle called to our attention by appellants' counsel as stated in 70 C. J. 813, sec. 1020: "As bearing on his credibility, a witness may be cross-examined as to inconsistent acts or conduct generally, acts or conduct inconsistent with his testimony, or omissions on his part which tend to discredit him." But we think in the proper administration of justice it would not be proper under the cover of this

principle to permit the vehicle of cross-examination to be used to convey to the jury a circumstance highly prejudicial to one of the parties which could not directly be placed before the triers of fact. Such an impropriety in the use of cross-examination should be within the control of the trial judge in the exercise of his impartial judicial discretion. We do not regard any of our cases cited by appellants, such as *Irish v. Smith,* 8 S. & R. 573; *Ott v. Houghton,* 30 Pa. 451; *Mullen v. Union Central Life Ins. Co.,* 182 Pa. 150, 37 A. 988, as conflicting with this sound rule. In none of them was presented the precise situation with which we are dealing. Nor do we think *Alford v. United States,* 282 U. S. 687, covers what is before us. There, the court held that a *reasonable* latitude must be given the cross-examiner. If reasonable latitude means in a proper and not unfairly prejudicial mode we think it cannot be said that the intended cross-examination meets the test of reasonableness. In that case the questions ruled out by the lower courts were asked by counsel for defendant in a criminal case to elicit information about where a witness for the government lived in order to extract information as to his surroundings and environment, particularly that he was in the custody of the Federal authorities. We can readily understand why under certain circumstances, as for instance to indicate that his testimony was affected by fear or by a desire to curry favor, such questions would be proper. As the Supreme Court said: "Prejudice [to defendant's case] ensues from a denial of the opportunity to place the witness in his proper setting." That was not the endeavor here; the ultimate purpose was to develop something improperly prejudicial.

In *Lenahan v. Pittston Coal Mining Co.,* 221 Pa. 626, 629, 70 A. 884, we said: "The fact that the defendant in an action for personal injuries is insured in an employers' liability company has not the slightest bearing on the issue. It is an irrelevant fact prejudicial to the de-

fendant and its introduction by the plaintiff, whether by testimony offered by him, by statements of his counsel, by offers of proof *or by questions asked witnesses or jurors under the pretense of disclosing interest or bias, is ground for reversal:* (Italics supplied) *Walsh v. Wilkes-Barre,* 215 Pa. 226; *Hollis v. Glass Co.,* 220 Pa. 49. The rulings of these cases will be strictly adhered to and rigidly enforced, and no evasion or circumvention of them by indirection will be tolerated." The opinion goes on to point out that it is always the right of the party against whom a witness is called to show by cross-examination "that he has an interest direct or collateral in the result of the trial or that he has a relation to the party from which bias would *naturally arise."* (Italics supplied.) As the opinion points out, cross-examination is proper only "as long as it [is] conducted in good faith *for a legitimate purpose."* (Italics supplied.) Here, it is obvious that it was to be carried on to inject something into the case which our decisions bar. In that action, the defendant in an accident case called its own attorney to discredit one of plaintiff's witnesses. On direct examination he had testified that he was attorney for defendant. On cross-examination counsel for plaintiff was permitted to ask him whether he was not also the attorney for the employers' indemnity company which had insured defendant against liability for accidents to employees, in order to show his further interest in the suit. It is not pretended in this case that the witnesses to whom the questions were to be presented had any interest in the suit.

Whether a particular line of cross-examination is proper is a matter for the discretion of the trial judge: *Gallagher v. Phila. R. T. Co.,* 248 Pa. 304, 93 A. 1074; *Maloy v. Rosenbaum Co.,* 260 Pa. 466, 103 A. 882; *Thompson v. American Steel & Wire Co.,* 317 Pa. 7, 175 A. 541; *Pusey's Est.,* 321 Pa. 248, 184 A. 844. "The extent to which a witness may be cross-examined for this purpose [to test his credibility] rests in the sound dis-

cretion of the trial court": *Fischer v. Commercial Nat. Bank,* 321 Pa. 200, 202, 184 A. 57. To which we may add, so does the fairness and propriety of the examination.

The judgments are affirmed.

Mr. Justice MAXEY, Mr. Justice DREW and Mr. Justice STERN dissented.

DISSENTING OPINION BY MR. JUSTICE MAXEY:

I dissent from the majority opinion. I think that the questions proposed to be addressed to defendant's witnesses on cross-examination were proper and pertinent. The probative value of the expected answers is obvious and the rules of evidence sustain the appellants' position. The asking of questions likely to elicit the truth of an issue is essential to a just result and in respect to them the limit of a trial judge's "discretion" is the boundary line of a litigant's rights.

In the case of *Gallagher v. P. R. T. Co.,* 248 Pa. 304, 93 A. 1074, cited in the majority opinion, this court quoted with approval the following statement from the opinion of this court in *Glenn v. P. & W. C. Traction Co.,* 206 Pa. 135, 55 A. 860: ". . . the range of a cross-examination, to a very great extent, must be left to the sound discretion of the trial judge, and unless that discretion has been plainly abused, to the injury of the party complaining, it is not ground for reversal." In my judgment, this discretion has been "plainly abused" in this case "to the injury of the party complaining." In that case the trial judge refused to permit plaintiff's attorney to examine one of defendant's witnesses on cross-examination in regard to matters not touched upon in the direct examination and not intended to show bias, or to test the integrity of the witness or the accuracy of his statements. In this case the question ruled out was obviously intended to test the integrity of the witnesses and by inference the accuracy of their statements.

In *Thompson v. American Steel & Wire Co.*, 317 Pa. 7, 175 A. 541, also cited in the majority opinion, the question excluded "had relevance merely to test the *qualifications* of the witness, who had already been extensively cross-examined for the purpose." This court there said further: "The extent to which cross-examination *of this character* [italics supplied] can be carried must be, and is, within the control of the court." In the case at bar the cross-examination was not merely to test the *qualifications* of the witness; it went to the very heart of the issue.

In *Pusey's Estate*, 321 Pa. 248, 184 A. 844, also cited in the majority opinion, this court said: "Appellants complain that appellees' counsel exceeded the proper limits of cross-examination. Cross-examination is a vital and essential requisite in our system of trials. As stated by Prof. Wigmore, it is probably 'the greatest legal engine ever invented for the discovery of truth': Wigmore on Evidence (2nd Ed.), section 1367. While the right is often abused, nevertheless to confine it within too narrow limits would seriously impair its effectiveness." In that case the complaint was that too wide a latitude had been given to cross-examination and this court refused so to hold, saying: "A wide latitude was necessary here where a sharp contradiction existed in vital testimony, the truth of which could only be found by a searching investigation; credibility was a prime factor."

The application of the principles just cited is, I think, in the instant case determinative of the question in appellants' favor, as I believe the following review of the facts indicate.

At about 10 p. m., December 30, 1934, the plaintiffs were passengers in an automobile being driven by Harry Zeitlin westward near Freehold, New Jersey. They were traveling about 125 to 150 feet behind the car being driven by defendant. At the scene of the accident the concrete road is straight and is twenty feet wide. A

collision occurred between defendant's car and the "Jackson car" coming in the opposite direction. Plaintiffs' evidence indicated that defendant, in attempting to pass a car ahead, went over on the wrong side of the road and collided with the Jackson car. Defendant's evidence was that the Jackson car when opposite defendant's car abruptly turned over to defendant's side of the road and struck the latter's automobile. After this collision the Jackson car was out of control and ran into the Zeitlin car, striking it on the left side. Defendant's car thereafter continued west on the wrong side of the road for about 300 feet.

Nathan Freedman and Anna Freedman, his wife, were passengers in defendant's car. They were called by him as witnesses and testified that his car was on its own side of the highway at all times and that there was no automobile ahead of it. On cross-examination counsel for the plaintiffs proposed to ask each of these witnesses three questions: (1) whether or not the witness had claimed damages from defendant by reason of injuries he or she had received in the accident, (2) whether or not they had in writing released defendant from all claims for such injuries, and (3) whether or not they had received from defendant a sum of money for such injuries. Exceptions to these questions were sustained and a verdict was returned for defendant. Exclusion of these questions was assigned as reasons for a new trial. A new trial was refused. Both plaintiffs appealed.

Appellants contend that the questions excluded were proper to test the credibility of the Freedmans on the theory that if they admitted they made claims against the defendant, it would indicate that they regarded the defendant as negligent and this would be contrary to their testimony at the trial. The court below ruled out these questions on the ground that the making of a claim for damages, the signing of a release, and the receipt of money in satisfaction of the claim made, was "only by inference" inconsistent with the testimony given, where-

as the witnesses "could have been asked concerning any statements made by them that defendant had been careless, or any statements otherwise contradictory to their testimony in direct examination." In the opinion refusing a new trial it is stated that "at the side bar conference" the trial judge was informed that "small settlements were made with Mr. and Mrs. Freedman by the insurance company on behalf of defendant" and that counsel for defendant "argued at side bar that to permit the Freedmans to answer the questions propounded would require him in re-direct examination to put before the jury the nature of the settlements and that this would inevitably result in revealing to the jury that defendant was protected by insurance and it was largely to avoid this impropriety that the trial judge exercised his discretion in excluding the testimony."

The limiting of the cross-examination "to any *statement* contradictory to their testimony in direct examination" was, in my judgment, error. A witness's *action* in a given situation may be completely contradictory to his later sworn statement and if it is, or appears to be, so contradictory, the jury is entitled to be informed of it so that they may take it into consideration in appraising his testimony.

Cross-examination is not a privilege but a right. See *Alford v. United States,* 282 U. S. 687. All testimony must be subjected to the test of cross-examination by the party against whom it is adduced. Only after cross-examination can a witness's credibility be appraised and the weight to be accorded his words be determined. Chief Justice GIBSON said in *Bank v. Fordyce,* 9 Pa. 275, 277: "A party is entitled to bring out every circumstance relating to a fact which an adverse witness is called to prove." A party is entitled to ask an adverse witness almost any pertinent question the answer to which tends to weaken or destroy the effect of the testimony in chief. Thayer in "A Preliminary Treatise on Evidence at the Common Law" declares, page 530, "two

leading principles" of evidence to be "(1) that nothing is to be received which is not logically probative of some matter requiring to be proved; and (2) that everything which is thus probative should come in unless a clear ground of policy or law excludes it." Wigmore on Evidence, Vol. 3, (2nd ed.) sec. 1368, aptly says: "A witness, on his direct examination, discloses but a part of the necessary facts. That which remains suppressed or undeveloped may be of two sorts, (a) the remaining and qualifying circumstances of the subject of testimony, as known to the witness, and (b) the facts which diminish and impeach the personal trustworthiness of the witness." In *Quigley v. Thompson,* 211 Pa. 107, 60 A. 506, this court said: "An incident of a transaction proved and circumstances connected with it, which qualify or destroy the effect of the testimony in chief, may be brought out in cross-examination." In *Mullen v. Ins. Co.,* 182 Pa. 150, 37 A. 988, this court said: "Any act or omission of the plaintiff inconsistent with his claim or with the testimony submitted to sustain it was pertinent to the issue, and therefore admissible, and so was a cross-examination of him directed to the development of a course of conduct incompatible with either."

In the instant case the cross-examination attempted by plaintiffs' counsel of the witnesses Freedman was "directed to the development of a course of conduct incompatible with" the direct evidence they gave. That they claimed damages from the defendant for conduct of his which on the witness stand they declared blameless logically tended to contradict their sworn testimony and to impeach their credibility. The settlement which the cross-examination tended to bring to light certainly tended to destroy the effect of the testimony in chief. Wigmore in sec. 1017 of his second edition of Evidence points out that "an approved method of demonstrating a witness's error and discrediting him is the process of using a prior self-contradiction." He quotes from Chief BARON GILBERT on Evidence, 147, 150, as follows:

"Things totally opposite cannot receive belief from the attestation of any man. . . . Contraries cannot be true." Wigmore says (sec. 1040) : "The form of the supposed contradictory assertion is immaterial. . . . The inconsistency may be found expressed, not in words, but in conduct indicating a different belief." Deeply imbedded in human nature is the recognition of the probative force of conduct; this recognition finds expression in the time-honored and commonplace maxim that "actions speak louder than words." That an apparent inconsistency between a witness's conduct and his testimony may possibly be cleared up or minimized by explanation does not affect the admissibility of testimony of such conduct.

If in the instant case the witnesses who, it is alleged, made a claim for damages and received a sum of money as compensation, did so *in good faith,* it follows that their sworn testimony as to defendant's freedom from negligence was not honestly given; if the claim was made *in bad faith,* that fact would show such a lack of moral integrity as to impeach their veracity. Any fact is admissible in evidence (unless excluded by some consideration of public policy) which tends to negative the presence in a witness of "that sense of moral duty to speak truly which is at the foundation of the theory of testimonial evidence."

Earlier in this opinion there is quoted the reasons given by the court below for excluding the cross-examining questions referred to, these reasons being "certain facts not in the record" and relating to settlements made by an insurance company protecting the defendant and possible disclosure of these facts if the questions had been allowed.

The answer to that is: (1) that the admissibility or non-admissibility of testimony must be governed by the state of the record, not tested by facts *not* in the record, (2) that mere affirmative answers to the questions would have served plaintiff's legal purpose and such an-

swers would not have required a disclosure that the defendant was insured or that the money paid in settlement came from an insurance company, and (3) that if counsel for defendant in re-direct examination saw fit to elicit the fact that defendant was shielded by an insurance company, his client would have to abide the consequences. This court held in *Lenahan v. Pittston Coal Mining Co.*, 221 Pa. 626, 70 A. 884: "The right [of cross-examination] is not to be denied or abridged because incidentally facts may be developed that are irrelevant to the issue and prejudicial to the other party." In that case it was said further, in substance, that when one party "opened the door for this inquiry and as long as it was conducted in good faith for a legitimate purpose," the other party "was within his rights" in proceeding with proper cross-examination.

The court below in its opinion refusing a new trial quoted from the opinion of this court in *Fischer v. Commercial Nat. Bank,* 321 Pa. 200, 184 A. 57, as follows: "The extent to which a witness may be cross-examined for this purpose [to prove his credibility] rests in the sound discretion of the trial court," citing *Jessop v. Ivory,* 158 Pa. 71, 27 A. 840. In the latter case the complaint was that the trial judge permitted a *too extensive* cross-examination to test a witness's credibility. This court there said: "Considerable latitude must be allowed in cross-examination in cases like the present, and much must be left to the discretion of the trial judge, whose position enables him to see the exigencies of the trial much better than we can."

In the case now before us, the questions it was proposed to ask on cross-examination were not questions whose *sole* purpose was to impeach the veracity of the witnesses. That is an incidental effect of every successful contradiction, but here the purpose was not merely to discredit the witnesses but to show that their testimony as to defendant's *careful* driving was inconsistent with their action in claiming damages from him by

reason of his *careless* driving. To show by cross-examination that a witness previously had said or done something inconsistent with the relevant fact he testified to, is a litigant's absolute right. Protection of a litigant's trial rights is a judicial duty; denial of these rights cannot properly be characterized as a mere "exercise of judicial discretion." The denial of the right of a litigant to cross-examine an adverse witness on a relevant fact is far different from a mere limitation of the extent of a cross-examination. Even such a limitation may so prejudice a party's interest as to amount to an abuse of judicial discretion. The cross-examination of a witness to show bias, or corruption, or inability or lack of opportunity to observe the thing he describes might take an impracticable range unless restrained by the trial judge by a proper exercise of discretion. Wigmore in Vol. 2 (2nd ed.) of Evidence, makes a distinction between contradicting a witness by (1) "facts relevant to some issue in the case" and (2) "facts [merely] relevant to the discrediting of a witness." In the instant case the facts appellant expected to elicit on cross-examination were facts relevant to the issue in the case. They would also tend incidentally to the discrediting of the witnesses. The questions should have been allowed.

The conclusion, which I think is the correct one, is in harmony with the decisions in other jurisdictions where the same question has been adjudicated.

In *Mo. Pac. Transp. Co. v. Norwood,* 90 S. W. (2nd) 480 (1936), a bus passenger sued for injuries sustained in a collision. Witnesses for defendant testified to facts tending to show that the bus driver was not negligent. On cross-examination the attorney for plaintiff was permitted to ask these witnesses whether they did not present claims to defendant for injuries they had received in the collision, or whether they had not settled with defendant for such injuries. This was held to be no error, the court saying: "The questions and answers were admissible as tending to contradict their testimony and

also to go to the credibility of the witnesses." In *Lanasa v. Beggs*, 159 Md. 311, plaintiff, while riding in a taxicab, was injured by the collision of the taxicab with a truck owned by defendant. Plaintiff, having testified on direct examination that the taxicab driver was not at fault, on cross-examination was asked whether she had not brought suit against the taxicab company on account of the collision, and had not told her attorney that the driver of the taxicab was at fault. This was held to be proper cross-examination. In *Gurley v. St. Louis Transit Co.*, 259 S. W. 895 (Mo.), in an action against an employer for the injury of a workman, another workman injured in the same accident testified for the defendant. On cross-examination he was instructed by the court to answer the question as to what settlement the employer had made on account of his injuries. This action of the trial court was affirmed on appeal. See also *Keet v. Murrin*, 260 N. Y. 586, 184 N. E. 104.

I would reverse the judgments of the court below and award a venire.

DISSENTING OPINION BY MR. JUSTICE DREW:

I cannot assent to the opinion and conclusion of the majority. Both are based on an assumption that the cross-examination proposed was not in good faith; that it had for its object an insidious purpose, to reveal to the jury that defendant was protected by insurance. I am certain that such is not so, and it seems to me the record and surrounding circumstances support my view. The assumption rests solely on a statement of the trial judge, admittedly outside the record, based on a statement of counsel for defendant "at side bar," that defendant had made no settlement but that his insurance carrier had, and that if the witnesses were required to answer the questions, he would be compelled to reveal the fact of insurance.

The majority does not deny that the questions, if asked in good faith and not for the purpose of intro-

ducing the insurance carrier, are entirely proper cross-examination. That they are is settled in other jurisdictions by decisions in which the precise problem arose: *Mo. Pac. Transp. Co. v. Norwood,* 90 S. W. (2d) 480 (Ark.); *Lanasa v. Beggs,* 159 Md. 311; *Gurley v. St. Louis Transit Co.,* 259 S. W. 895 (Mo.); *Keet v. Murrin,* 260 N. Y. 586; *Etheridge v. Gordon Construction Co.,* 62 Wash. 256. The questions were intended and were competent to test the credibility of two important witnesses. I think it can fairly be said the testimony of these witnesses, apparently disinterested and unbiased, won the case for the defendant. If plaintiffs had been permitted to show, as they attempted to do, that these witnesses had claimed damages as a result of the same accident, and had received settlements from defendant, the jury would have examined their testimony with the greatest care, and possibly have disbelieved their entire story. In the circumstances any competent trial lawyer would have wished to place these facts before the jury so it could intelligently weigh the credibility of the witnesses, and determine their interest or bias, if any. If it appeared they made claims and received settlements, their actions would seem to directly contradict their words at the trial that defendant was entirely free from negligence in the happening of the accident. Whatever tends to show conduct inconsistent with testimony or to disclose natural reason for bias may be investigated on cross-examination: *Mullen v. Union Central Life Ins. Co.,* 182 Pa. 150; *Ott v. Houghton,* 30 Pa. 451; *Philadelphia v. Dobbins,* 24 Pa. Superior Ct. 136; 2 Wigmore, Evidence (2d ed.), section 1040. Such examination, "directed to the situation of the witness, his relations with the party calling him, his zeal or bias as shown by his conduct," is always proper: *Beck v. Hood,* 185 Pa. 32, 38. "Where the witness discredits himself in his examination in chief, a liberal cross-examination should be permitted which tends to attack his conduct and im-

peach his credibility": *Glenn v. Traction Co.,* 206 Pa. 135, 140.

I do not find anything in the case, except the side-bar statement of defendant's counsel, which could indicate that the "ultimate purpose was to develop something improperly prejudicial." I am at a loss to know how the allowance of the questions would compel the disclosure of insurance, and why they are branded "adroit." The question as to consideration for settlement was carefully limited to defendant. If it was in fact an insurance company that paid, the witnesses would have answered in the negative, and the matter would have been closed without any mention of the company. Instead of being adroitly phrased to invite mention of insurance it seems to me the question was drawn with care to avoid it. It was defendant's counsel who said if the questions were allowed he would so examine that it would be revealed to the jury that defendant was protected by insurance. He could introduce his company or not, as he pleased. That was his business. It was not being done by plaintiffs; they should not have been denied their right of cross-examination in such an important matter because defendant's counsel thought he might have to do something which would prejudice his case in the eyes of the jury. The very fact he thought he would have to explain the conduct of his principal witnesses, even at the risk of introducing an insurance carrier, shows how important it was to plaintiffs to have all the facts presented to the jury. If the witnesses made claims and received compensation for settlements they were inconsistent at trial in exculpating defendant from all liability no matter whose money they took; if they received the money as a gratuity without having pressed a claim the likelihood of bias is present nevertheless. Mention of insurance could explain away neither impeaching circumstance.

I assert there was no attempt "to inject something into the case which our decisions bar." Our case of

*Lenahan v. Pittston Coal Mining Co.,* 221 Pa. 626, is directly in point and should rule this case in favor of plaintiffs. There the defendant in an accident case called his own attorney to discredit one of plaintiff's witnesses. On direct examination he testified he was attorney for defendant. On cross-examination he was allowed to be asked whether he was not also the attorney for an employer's indemnity company which had insured defendant against liability for accidents to employees. In approval of this cross-examination, although it revealed that defendant was protected from liability by an insurance company, this court said, at page 629, "It is always the right of a party against whom a witness is called to show by cross-examination that he has an interest direct or collateral in the result of the trial *or that he has a relation to the party from which bias would naturally arise.* Such an examination goes to the credibility of the witness: *Ott v. Houghton,* 30 Pa. 451; *Batdorff v. Bank,* 61 Pa. 179. The right is not to be denied or abridged because incidentally facts may be developed that are irrelevant to the issue and prejudicial to the other party. This chance the party takes when he calls the witness." [Italics added.] To the same effect is *Baymond v. Sternberger,* 116 Pa. Superior Ct. 451. Similarly a multitude of cases in other jurisdictions allow impeachment by reason of interest, bias or inconsistency even at the inevitable risk of disclosing defendant's insurance protection: *Wabash Screen Door Co. v. Black,* 126 Fed. 721; *Murray v. Jackson,* 180 Ark. 1144; *Vindicator Gold Mining Co. v. Firstbrook,* 36 Colo. 498; *Curtis v. Ficken,* 16 Pac. (2d) 977 (Idaho); *Cadle v. McHargue,* 249 Ky. 385; *Dempsey v. Goldstein Co.,* 231 Mass. 461; *Mississippi Ice Co. v. Pearce,* 161 Miss. 252; *Di Tommaso v. Syracuse University,* 158 N. Y. S. 175; *Fletcher v. Saunders,* 132 Ore. 67; *Page v. Thomas,* 47 S. W. (2d) 894 (Tex.); *McAndrews v. Leonard,* 99 Vt. 512; *Rust v. Washington Tool Co.,* 101 Wash. 552; *Martell v. Kutcher,* 195 Wis. 19. In the *Lenahan* and *Bay-*

*mond* cases it was held proper to ask the witness directly whether he was not employed by defendant's insurance carrier.

The ruling of the *Lenahan* case, it is true, reserves a qualification. The cross-examination must be in good faith. I can detect no bad faith in this case; nor is bad faith to be readily presumed or founded on suspicion only: *Fletcher v. Saunders,* supra.

In my opinion the majority also fall into error in not differentiating between "limiting" and "excluding" cross-examination. The opinion of the learned court below indicates it too confused the right of a trial judge to limit the extent of cross-examination with the exclusion of all cross-examination. It is a duty of a trial judge to limit or put an end to cross-examination when it has fully answered its purpose. But to prevent all cross-examination on a relevant and material matter, as was done here, is improper. It is a matter of right. Its permissible purpose is to bring out facts tending to discredit the witness by showing that his testimony in chief was untrue or biased. As said in *Alford v. United States,* 282 U. S. 687, 692, "Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them."

The following cases mentioned in the majority opinion, I think, are beside the point. In *Fischer v. Commercial National Bank,* 321 Pa. 200, it was held that after an extensive cross-examination had been conducted, it was in the trial court's discretion to refuse to hear more. In *Pusey's Estate,* 321 Pa. 248, the complaint was that too much cross-examination was allowed. It was held the extent of it was a matter in which the trial court had a wide discretion. In *Thompson v. American Steel & Wire Co.,* 317 Pa. 7, there was also extensive examination, and again we held it was proper for the judge at trial to exclude more. *Maloy v. Rosenbaum Co.,* 260 Pa. 466, for all that appears, is sim-

ilar, for there it is said, at page 472, "In some of the rulings called to our attention, we are impressed that the learned judge below might have been more liberal, without harm to either side, but we cannot say he committed reversible error; moreover, in practically every instance, the substance of the matter which his restriction eliminated was subsequently brought out by other questions that he permitted." *Gallagher v. Phila. R. T. Co.,* 248 Pa. 304, merely holds that a plaintiff may not establish his own case by cross-examination as to matters on which there is no testimony in chief, and states the general rule that "the range of cross-examination, to a very great extent, must be left to the sound discretion of the trial judge." In my opinion none of these cases support what was done here. Not one of them is concerned with the total exclusion of all cross-examination on a pertinent, relevant matter.

The consequences of the ruling of the majority are easy to conjecture. In most litigated accident cases the defendant is insured and the insurer the real defendant—the one who pays the verdict. Such is true here. In the future "in such cases" the decision "here" will be a bar to the jury's knowing that witnesses who made claims and accepted money in settlement of them are actually denying under oath that there was any liability for the accident on the part of the defendant for the very happening for which they claimed damages and received compensation. Such information should not be kept from the jury. It most definitely indicates interest, bias, or inconsistency, and should be given to the jury to determine the credibility of the witness. The insurance carrier placed defendant's counsel in the embarrassing position of which he complained, not the plaintiffs. Under such circumstances, surely plaintiffs should not be compelled to protect defendant's case at the cost of their own.

I would reverse the judgments and grant a venire.

Petition for writs of certiorari denied, January 10, 1938: *Kaplan v. Loev,* 302 U. S.