Howard JAMISON, Administrator of the Estate of Albert Tucker, Deceased,

v.

A. M. BYERS COMPANY, Appellant.

No. 14262.

United States Court of Appeals Third Circuit.

Argued Nov. 8, 1963.

Decided April 8, 1964.

Rehearing Denied May 20, 1964.

Bernard G. Segal, Philadelphia, Pa. (Schnader, Harrison, Segal & Lewis,

Philadelphia, Pa., Burns & Manley, Pittsburgh, Pa., Samuel D. Slade, Shirley S. Bitterman, Philadelphia, Pa., James J. Burns, Jr., Pittsburgh, Pa., on the brief), for appellant.

James E. McLaughlin, Pittsburgh, Pa. (Dennis C. Harrington, Thomas L. Cooper, David O'Hanesian, McArdle, Harrington & McLaughlin, Pittsburgh, Pa., on the brief), for appellee.

Before KALODNER, STALEY and SMITH, Circuit Judges.

KALODNER, Circuit Judge.

Defendant A. M. Byers Company has appealed from a judgment entered pursuant to a jury's verdict [1] in a diversity action brought by the plaintiff, administrator of the estate of Albert Tucker, deceased, for recovery of damages under the Pennsylvania Wrongful Death [2] and Survival Acts,[3] following the District Court's denial of its motions for judgment N.O.V., or in the alternative, for a new trial.

Tucker, a 23-year old carpenter's helper, employed by Allegheny Contracting Industries, Inc. ("Allegheny"), was killed on February 3, 1959 when a trench caved in while he was assisting one May, carpenter in charge, in shoring a part of it. The trench was being excavated by Allegheny at the South Side plant of A. M. Byers Company in Pittsburgh, Pennsylvania, as part of a sewer construction project pursuant to a written contract awarded to Allegheny. As the contract, in Section 2.04 described A. M. Byers Company as "Engineer" it may hereinafter be referred to in that manner.

Since jurisdiction is based on diversity, Pennsylvania law governs.

The facts as to the accident itself are detailed in the District Court's opinion reported at 222 F.Supp. 475 (W.D.Pa. 1962). They may be summarized as follows:

The trench was to be 20 feet deep and 5 feet wide. (The record does not disclose its length). At the time of the accident about 25 feet of the trench had been shored; 8 to 10 feet remained unshored. Tucker assisted May in constructing "forms" for the shoring; each form was about 10 feet long and 5 feet wide; the "forms" were lowered into the trench one on top of the other to form a supporting frame work for the shoring planks or sheeting which were then secured along the sides of the excavation. The cave-in was due to the fact that the shoring planks were too short and the bracing was too small,[4] and as a consequence the shoring twisted or shifted throwing the "braces out of square and they collapsed." [5] Tucker "had but little experience in the type of work in which he was engaged", and "His classification was that of a semi-skilled laborer." [6] The issue of his contributory negligence was left to the jury with the instruction that the plaintiff could not recover if the jury found Tucker to have been guilty of contributory negligence.

It must immediately be noted that on this appeal it is undisputed that the shoring operation was negligently performed, as the jury found it to be.

It should be added that the case was tried under the theory advanced by plaintiff's counsel that the applicable law was

---

1. The jury awarded $104,805 under the Wrongful Death Act and $45,000 under the Survival Act, making a total verdict of $149,805. The Death Act award was subsequently reduced to $50,000 pursuant to the order of the Court that unless the plaintiff remitted the sum in excess of that amount it would grant a new trial as to damages under the Death Act.

2. 12 P.S. § 1601.

3. 20 P.S. § 320.601.

4. There was testimony at the trial that the sheeting was "anywhere from two to four feet" too short, and that the bracing was made up of 4 x 4 timbers rather than 4 x 6 timbers as required by the Pennsylvania Department of Labor, Rules and Regulations for Trenches and Excavations, or 6 x 6 (or even 8 x 8) timbers which were necessary because of additional conditions not considered in the Rules.

5. Testimony of Frank W. Miller.

6. 222 F.Supp. 477.

that found in Section 414 of the Restatement of Torts, which provides in sum that one who entrusts work to an independent contractor but retains control of any part of the work is subject to liability for the contractor's negligent performance which causes bodily harm to others.

The District Court charged the jury in accordance with this theory. It also instructed the jury that it might find the retention of control under the terms of the contract.

On this appeal the defendant urges (1) that under Pennsylvania law right of control is insufficient to establish liability in the absence of the actual exercise of control and that here there was no exercise of control; (2) that the contract did not establish right of control but the contrary; (3) that the District Court erred in not construing the contract and leaving it to the jury to do so; (4) that the issue of contributory negligence was improperly submitted to the jury, and (5) that the District Court erred in permitting the contract to go to the jury without deletion of its provisions with respect to liability insurance.

First, as to the contention that *right of control* is insufficient to establish liability, and that *exercise of control* is essential to establish liability on the part of the employer of an independent contractor:

In Spinozzi, Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co., Intervenor v. E. J. Lavino and Company, 243 F.2d 80 at page 82–83 (1957) we said:

"The Pennsylvania courts have recognized that the employer should be liable *where he has retained control of some part of the work*, or so interfered with the performance of the job as to have assumed control, and his failure to exercise that control with reasonable care causes harm to others." (emphasis added)

In essence the defendant contends that the italicized language is not a correct statement of Pennsylvania law, although he does not attack the holding in Spinozzi on its facts. He asserts that in Spinozzi and the cases cited therein, McGrath v. Pennsylvania Sugar Co., 282 Pa. 265, 127 A. 780 (1925), Stork v. Philadelphia, 199 Pa. 462, 49 A. 236 (1901), Pender v. Raggs, 178 Pa. 337, 35 A. 1135 (1896) liability was premised solely on the fact that the employer (of the independent contractor) had actually interfered with and controlled the work being performed.

In Spinozzi there was evidence of both actual control over the contractor's activity and of *retention of control*. The holding of the court is consistent with the conclusion that the jury was justified in basing liability on either ground or both. This is in line with the Restatement which was relied on by the District Court.

The Pennsylvania cases which antedate the Restatement (1934) provide no greater solace for the defendant's view than did Spinozzi. In Stork v. Philadelphia, supra, the City of Philadelphia had engaged an independent contractor to construct a subway line below Pennsylvania Avenue. Apparently the City had retained the right to determine when shoring would be necessary to protect dwelling houses along the proposed route. It refused to authorize shoring of plaintiff's house when the excavation was first undertaken and as a result serious damage followed. The jury decided in plaintiff's favor and on appeal the defendant questioned the propriety of sending such a case to the jury. The Supreme Court affirmed the judgment predicating negligence on two factual grounds: (1) that the city had retained the right to determine when shoring should be done, and (2) that the city refused or *neglected to* authorize shoring at the plaintiff's residence. Stork manifests direct Pennsylvania support for the Spinozzi-Restatement view.

Furthermore, neither McGrath v. Pennsylvania Sugar Co., supra, nor Pender v. Raggs, supra, is to the contrary. In both the element of retained control was lacking, thereby leaving "as-

sumption of control" and direction of the contractor's labor as the sole questions for the jury's determination. Defendant has not cited Pennsylvania cases to refute the Restatement view.

Assuming that the defendant retained control over Allegheny's shoring operation then the instant case is well within our holding in Quinones v. Township of Upper Moreland, 3 Cir., 293 F.2d 237 (1961). There the defendant's Engineer was authorized to assure compliance, by an independent contractor, with the terms of a contract. It appeared from the evidence that an employee of the Engineer visited the job site "two or three times a week" and that he knew the day before the accident that no shoring had been done on a particular excavation, but did not order shoring. We upheld the jury's finding that the Township was liable to the estate of a worker killed when the excavation caved in.

In doing so we said at page 241 of 293 F.2d:

"What has been said makes it clear that there was ample basis for the jury's fact-finding that Township (1) had 'retained control' in the performance of McCabe's [the in-independant contractor] contract, and (2) was negligent in not having required McCabe to shore the trench * * *. Under the circumstances here [this] constituted negligence on the part of the Township."

In Quinones there was "retention of control" coupled with a failure to properly exercise that control. Here the jury found that the defendant retained control and did nothing to ascertain the condition of the shoring or to remedy any defects that it might have known of.[7]

■ The critical question then is whether the defendant retained "control" over the shoring operation. The only evidence presented to the jury on this point was the contract. There is no in-dication that the contract could not have been interpreted by looking to the meaning of its words, in their plain or popular sense, without the use of collateral or extrinsic evidence. The District Judge erred in leaving construction of the contract to the jury since it was the court's function to do so. See Easton v. Washington County Insurance Co., 391 Pa. 28, 137 A.2d 332 (1957); Baldwin v. Magen, 279 Pa. 302, 123 A. 815 (1924); see also Wilson v. Homestead Valve Co., 217 F.2d 792 (3 Cir. 1954), cert. den. 349 U.S. 916, 75 S.Ct. 606, 99 L.Ed. 1250 (1955).

■ However, since in resolution of the defendant's second contention we are of the opinion that under the terms of the contract *right of control* of the shoring operation was retained by the defendant, the District Court's error is harmless.

Section 105 of the contract provided in part:

"The Engineer [the defendant] shall have authority *to stop the work* whenever such stoppage may be necessary to insure the proper execution of the Contract.

"Re-examination of *questioned* work may be ordered by the Engineer and if so ordered the work shall be uncovered by the Contractor."

Section 301 of the contract provided in part in paragraph 9:

"The neglect, failure, or refusal of the Engineer *to order the use of bracing, sheeting, or a better quality, grade, or section, or larger sizes of steel or timber, or to order sheeting, bracing, struts, or shoring to be left in place,* or the giving or failing to give orders or directions as to the manner or methods of placing or driving sheeting, bracing, jacks, wales, rangers, or other members, shall not in any way or to any extent relieve the Contractor of his responsibility concerning the condition

---

7. There was testimony at the trial that two men thought to be the defendant's employees or "engineers" were present at the job site on the day of the accident. De-fendant properly contends, however, that the evidence as to whether or not they were its employees depends solely upon hearsay.

of excavation or of any of his obligations under the Contract. * * *"

Section 3.02 "Trench Excavation" provides in paragraph 3:

"The Contractor shall do all bracing, sheathing, and shoring necessary to perform and protect all excavations, as required for safety, *as directed by the Engineer*, or to conform to governing laws."

Section 3.03 provided in paragraphs 2 and 3:

"If *in the opinion of the Engineer*, the material used for refilling is of such character that satisfactory results cannot be obtained by tamping or ramming, the Contractor shall refill and puddle the excavation in such manner and at such times *as the Engineer may direct.*

"If the material excavated from the cut is not clean earth, as above specified, the best of the materials excavated shall be used in backfilling, in position and manner *as directed by the Engineer. * * *"* (emphasis added)

In our opinion the emphasized provisions in the contract clearly spell out the *right of control* of the defendant over the excavation and shoring operations.

As to the defendant's contention that the issue of contributory negligence was improperly submitted to the jury:

■ This contention is premised on the defendant's view that Tucker was negligent in entering the excavation when he should have known that it was improperly shored, and this clearly contributed to the cause of his death; and further that if this cannot be determined as a matter of law a new trial must be granted, since the trial judge prejudiced the defendant's case when he told the jury, after charging on the issue of contributory negligence, that the evidence did not warrant a finding for the defendant on this question. The initial contention, that we must find as a matter of law that Tucker was contributorily negligent, is without merit. It is the defendant's view that Tucker had had

enough "experience" to fully recognize the improper condition of the shoring and the dangers of working in an excavation so shored. The defendant did not produce a shred of evidence in support of this assertion. In fact, the evidence was that Tucker had had but little experience in the type of work he was performing when the accident occurred. The most that can be said for the defendant's position is that reasonable men might have found that a worker of Tucker's "experience" should have known that the shoring used was unsafe and that to work under such conditions was dangerous. Thus stated it was purely a question for the jury. See Dougherty v. Philadelphia National Bank, 408 Pa. 342, 184 A.2d 238 (1962); see also Rinard v. YBH Sales and Service Co., 328 F.2d 959 (3 Cir. 1964); Quinones v. Township of Upper Moreland, supra. We add that in view of the fragile nature of the evidence as to Tucker's negligence the trial judge's comment with respect to it was not of prejudicial dimension.

■ There remains for disposition the defendant's contention that prejudicial error was committed by the trial judge in failing to delete from the contract its provisions with respect to liability insurance before the jury retired. It is the plaintiff's view that the insurance provisions of the contract were critically relevant to the issue of the right of control.

We are of the opinion that prejudicial error was committed in failing to delete the insurance provisions from the contract before the jury was permitted to have it on retiring to consider its verdict.

■ The applicable rule was succinctly stated in Lenahan v. Pittston Coal Mining Co., 221 Pa. 626 at page 629, 70 A. 884 at page 885 (1908):

"The fact that the defendant in an action for personal injuries is insured in an employers' liability company has not the slightest bearing on the issue [of negligence]. It is an irrelevant fact prejudicial to the defendant, and its introduction by

the plaintiff * * * is ground for reversal."

To the same effect see Capozi v. Hearst Publishing Company, Inc., 371 Pa. 503, 92 A.2d 177 (1952) and Kaplan v. Loev, 327 Pa. 465, 194 A. 653 (1937). In Capozi it was pointed out that the proper method of sending a relevant document such as the instant contract (assuming it to be relevant) to the jury is to delete or block out the insurance provisions.

For the reasons stated the judgment of the District Court of October 22, 1962 will be vacated and the cause remanded with direction to have a new trial limited to the question of damages only.