Peters, Appellant, *v.* Shear et al.

Argued January 2, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Samuel I. Sacks,* with him *Sacks & Piwosky,* for appellant.

*Norman Paul Harvey* and *Manuel Steinberg,* for appellees.

OPINION BY MR. CHIEF JUSTICE MAXEY, March 20, 1945:

This is an appeal from the refusal of the court below to grant a new trial. Plaintiff sued the defendant, Bar-

net E. Shear, in trespass to recover for injuries sustained as a result of an automobile collision at the intersection of 15th Street and Susquehanna Avenue, Philadelphia, on August 8, 1942. The automobile in which plaintiff was a passenger was operated by her husband, Leonard Peters. The defendant brought the plaintiff's husband on the record as an additional defendant. At the trial the latter was called as a witness for his wife, the plaintiff. His testimony related to the occurrence of the accident. Over objection he was then cross-examined by his own attorney who (so it is stated) was also the attorney for the defendant's insurance carrier. The first and second assignments of error are based upon the court's overruling plaintiff's objection to permitting the attorney for the added defendant to cross-examine his own client when called by the plaintiff as her witness.

The additional defendant testified in chief that the defendant's car was thirty to forty feet away when he first saw it. His counsel, in his cross-examination, asked him whether he had discussed the case with anyone; he replied: "I have discussed it with Mrs. Peters", and he added that he was in the office of Mr. Sacks (Mrs. Peters' attorney) "this morning" and that he "had a discussion coming over here this morning with Mr. Sacks". The cross-examiner then produced a statement which the witness had signed, declaring that he had never seen the Shear car until the collision. Counsel for the appellant argues "it is common sense that no jury would believe that a man would change his testimony without urging by others whose interests were affected. It appears to counsel for the plaintiff that Mr. Harvey's (Mr. Peter's attorney) interest and the plaintiff's interest were almost identical and that if Mr. Harvey had anything inimical to either interest, he should have so advised plaintiff's attorney, who would have been guided accordingly. Certainly producing such a statement at the second trial was a surprise and shock to the plaintiff

and her counsel. It appeared to counsel for the plaintiff that Mr. Harvey was laying the ground for the insurance carrier to disclaim in case of a verdict against Leonard Peters for his failure to coöperate with them."

Counsel for the additional defendant says that he "did not attack his client at any time, but only elicited information which unquestionably reacted to the advantage of his client, just as did counsel for the defendant in *Conley et al. v. Mervis,* 324 Pa. 577, 188 A. 350, when he elicited from his client on cross-examination information which explained away damaging testimony which the client had given during examination-in-chief by counsel for the plaintiff."

The Court said when Mr. Sacks objected to Attorney Harvey's cross-examination of the witness (his own client) : "You called him as your witness, didn't you?" and the answer was "yes". The implication was that when an attorney makes anyone his witness he takes the chance that the witness will be cross-examined by any attorney representing an adverse interest. It may be true as plaintiff's counsel argues, that in fact the additional defendant's interest and the plaintiff's interest "were almost identical", but as far as the record disclosed, their interests were at least *possibly* adverse. When the defendant brought the additional defendant on the record the former averred that the latter "is liable to the plaintiff or is jointly and severally liable with the defendant, or liable over to the defendant for the cause of action declared upon in plaintiff's statement of claim."

It is elementary that "A party is entitled [on cross-examination] to bring out every circumstance relating to a fact which an adverse witness is called to prove": *Bank v. Fordyce,* 9 Pa. 275. When Peters was called by the plaintiff as a witness, it followed that he would be subjected to cross-examination by the respective attorneys for the defendant and the additional defendant. Even if plaintiff had called Peters as "an adverse party

as upon cross-examination," plaintiff would have been concluded by his testimony, if uncontradicted, and this is true not only as to his own testimony as developed by the party who called him, "but also [as to] statements then elicited by his own counsel which are merely explanatory of such testimony." See *Readshaw et ux. v. Montgomery*, 313 Pa. 206, 209, 169 A. 135.

There is nothing unusual in permitting counsel to cross-examine his own client when that client is called as a witness by the adverse party. See *Stratton Massachusetts Gold Mines Co. v. Stratton*, 206 Mass. 117, 92 N. E. 34; *Teel v. Byrne*, 24 N. J. Law 631; *Jasper v. Bicknell*, 191 P. 115. 70 Corpus Juris, sec. 780, p. 613, makes this statement: "Where a party calls the adverse party as a witness, the latter may be cross-examined by his own counsel or by a codefendant."

Whether or not a litigant might feel aggrieved by his attorney eliciting from him when he was on the witness stand the fact that he had "changed his testimony" is not the question before us. We are concerned only as to whether the court committed error in overruling plaintiff's objection to the cross-examination of the additional defendant by the latter's counsel. We find no error in this. The first and second assignments of error are overruled.

The third assignment of error is based upon the court's saying "He does not have to take the stand", when counsel for the plaintiff, in his argument told the jury that the defendant's failure to take the stand could be interpreted against him. The fourth assignment is based on the court's saying in its charge that "the defendant is not obliged to take the stand in his own behalf. If you are sued by an individual or person in a case of this kind, he has to prove your negligence, and you do not have to go on the stand to disprove anything."

These two assignments of error are sustained. Counsel had a right to argue to the jury that the defendant's

failure to take the stand supported an inference adverse to his defense. This court said in *Dommes v. Zuroski,* 350 Pa. 206, 38 A. 2d 73, that the instruction given by the court below in that case that the defendant's failure to take the stand was "a circumstance" that the jury could "take into consideration in deciding what is the truth in the controversy" was proper. In *Hall et al. v. Vanderpool,* 156 Pa. 152, this court, speaking through Justice MITCHELL, said: "Where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory evidence, he fails to do so, the jury may draw an inference that it would be unfavorable to him. It is an inference of fact; not a presumption of law." This was quoted with approval by Judge RICE in *Ginder v. Bachman,* 8 Pa. Superior Ct. 405. In *Arnold v. McKelvey,* 253 Pa. 324, this court held in a negligence case: "that reference by the counsel for the plaintiff in his closing address to the jury to the fact that the defendant's chauffeur, who was in the court room and had been identified during the trial, had not been called as a witness in the defendant's behalf was within the limit of reasonable comment by counsel."

It is only in *criminal* cases that a defendant's failure to take the stand cannot be commented on either by the court or by counsel. See *Com. v. Green,* 233 Pa. 291, 82 A. 250, and Wigmore on Evidence, 3 ed., vol. 8, sec. 2272. In *Com. v. Brown,* 309 Pa. 515, 164 A. 726, we discussed the right of counsel to urge jurors to accept as reasonable the inferences which they respectively press upon them from the facts in the case. The third and fourth assignments of error are sustained.

Appellant also complains that the court in its charge told the jury that "a driver need not anticipate that another driver will be negligent." Plaintiff alleges that the defendant was negligent in not reducing his speed when he came to the intersection even though he did have "the right of way." There is no rule that one hav-

ing the right of way at an intersection must under all circumstances reduce his speed as he approaches the intersection; neither is there anything in the law which warrants a driver who at an intersection has "the right of way" proceeding across the intersection regardless of surrounding circumstances. A "right of way" possessed by a motorist is, like a "green light," not a command to proceed but a qualified permission to do so. There may be circumstances which makes proceeding by any motorist across the intersection at a certain speed or at any speed negligent, and a motorist, regardless of his possessing a theoretical "right of way," must exercise such *due* care as is required by the situation confronting him. Judge HIRT, speaking for the Superior Court in *Hess v. Mumma et al.*, 144 Pa. Superior Ct. 313, has well expressed the true rule on this subject, as follows: "The duty is imposed upon a driver to look for cross traffic at an intersection *so that he may take heed* from what his senses warn him. It is therefore of no controlling importance that defendant driver may have been negligent, though first in the intersection, or that plaintiff had the technical right of way over defendants' truck approaching from his left. 'Every person driving on a public highway even though he may have the right of way, must use reasonable care through the exercise of his senses to prevent his own injury and if he fails to do so the consequences must fall upon him, although the negligent act of another caused his injuries': *Stengel v. McMahon*, 116 Pa. Superior Ct. 349, 176 A. 857."

The sentence above quoted from the charge of the court below is a generality which might easily mislead a jury to believe that one possessing the "right of way" across an intersection is entitled to proceed *regardless of circumstances.* A prudent driver takes into consideration all possibilities of danger in any situation confronting him—and that includes the danger of the "other fellow" doing the *wrong* thing instead of the *right* thing. It is the duty of every driver to be prudent to the end that

the lives and bodily well-being of all persons who may be affected by either his acts or his inattentiveness in driving shall not be destroyed or imperiled.

The judgment is reversed and a new trial ordered.