589 A.2d 1112

**COMMONWEALTH of Pennsylvania**

**v.**

**Dennis JUBILEE, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 9, 1990.

Filed March 7, 1991.

Reargument Denied May 14, 1991.

John W. Packel, Asst. Public Defender, Philadelphia, for appellant.

Donna G. Zucker, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before WIEAND, KELLY and CERCONE, JJ.

WIEAND, Judge:

Dennis Jubilee was tried by jury and was found guilty of rape and corruption of a minor in connection with a sexual assault upon his six year old niece. Post-trial motions were denied, and Jubilee was sentenced to serve consecutive terms of imprisonment for not less than ten (10) years nor more than twenty (20) years on the rape conviction and for not less than two and one-half (2½) years nor more than five (5) years for corrupting a minor. A motion to modify sentence was denied without hearing, and Jubilee appealed. He contends that (1) he was denied his constitutional right to a public trial when the trial court ordered the courtroom locked during jury instructions; (2) the trial court erred in denying defense motions for mistrial following prosecutorial misconduct during closing argument; (3) the trial court committed error when it allowed the prosecution to introduce prior consonant statements of the victim; and (4) the

trial court erred when it required appellant's mother to read to the jury during cross-examination a letter containing references to her son's sins and use of drugs. We conclude that there is merit in several of these arguments. Therefore, we will reverse and remand for a new trial.

The criminal charges against appellant arose from an incident which occurred in June or July, 1986, while appellant was living at the home of his sister, Lydia Jubilee, and her five children. Late one evening, six year old Keia Jubilee left her bedroom and went downstairs to the living room to watch television. While she had been sitting on the couch, she said, appellant had removed his pants and "jumped" on top of her, forcing his penis "a little bit" into her vagina and causing her to cry. He told her, she said, that he would kill her mother if she reported what he was doing. When appellant heard one of the victim's sisters moving about upstairs, he got off her, and she ran back upstairs to her bedroom.

A short time later, the child attempted to tell her mother, but her words were ignored. However, in December, 1986, the mother questioned the victim about whether she had been sexually abused by her uncle. The victim then denied twice that she had been abused. Later the same day, however, she related to her mother the incident for which appellant was prosecuted. She also related the details of the assault to two social workers from the Department of Human Services and to a police officer.

At trial, the defense contended that the victim's mother had forced the victim to make false accusations against appellant so that the mother could extort money from her family. Therefore, the victim was vigorously cross-examined regarding her initial denials that she had been assaulted and was asked whether she had been pressured by her mother to accuse appellant. The victim said that she had been initially reluctant to tell her mother what happened because she feared that appellant would make good on his threat to kill the mother. After the victim had concluded her testimony, the Commonwealth presented the testimony

of two social workers and the policeman to whom the victim had reported the assault. These witnesses testified to the victim's description of the assault, which was generally consistent with the version which she had told her mother.

■ Prior to charging the jury, the trial court ordered that the courtroom doors be locked to prevent children, who had been present at the trial, from causing a disturbance by running in and out of the courtroom. Defense counsel objected.[1] On appeal, the defendant argues that by closing the courtroom doors the trial court denied him the constitutionally guaranteed right to a public trial. We disagree. The decision of the Superior Court in *Commonwealth v. Bullock*, 384 Pa.Super. 269, 282–283, 558 A.2d 535, 541–542 (1989) is controlling of this issue. There, the trial court had ordered that spectators not be permitted to enter or leave the courtroom during the jury charge because squeaky courtroom doors would have caused a disturbance. In rejecting the argument that the trial court's action had denied the defendant a public trial, the Superior Court observed: "Members of the public were free to remain in the courtroom during the court's charge. Thus, the protections guaranteed by the right to a public trial were not offended...." *Commonwealth v. Bullock, supra,* 384 Pa.Superior Ct. at 283, 558 A.2d at 542.

■ "In reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation but, rather, must be considered in the context in which they were made." *Commonwealth v. Williams,* 346 Pa.Super. 456, 459, 499 A.2d 1089, 1091 (1985), *overruled on other grounds, Commonwealth v. Hill,* 523 Pa. 270, 566 A.2d 252 (1989). See also: *Commonwealth v. Smith,* 490 Pa. 380, 388, 416 A.2d 986, 989 (1980); *Commonwealth v.*

1. The following exchange between defense counsel and the trial court occurred immediately prior to the charging of the jury.
    MR. MAAS: Your Honor, one other thing. I would object to locking the doors. This is a public courtroom.
    THE COURT: I don't want to be disturbed during my charge. I don't want these kids running in and out.
    MR. MAAS: I understand.

*Toledo*, 365 Pa.Super. 224, 236, 529 A.2d 480, 486 (1987). "Generally, 'comments by the district attorney do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict.'" *Commonwealth v. Strong*, 522 Pa. 445, 454, 563 A.2d 479, 483 (1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1536, 108 L.Ed.2d 775 (1990), quoting *Commonwealth v. McNeal*, 456 Pa. 394, 400, 319 A.2d 669, 673 (1974). See also: *Commonwealth v. D'Amato*, 514 Pa. 471, 490, 526 A.2d 300, 309 (1987); *Commonwealth v. Carpenter*, 511 Pa. 429, 439, 515 A.2d 531, 536 (1986). The initial determination whether the prosecutor's remarks were unfairly prejudicial rests within the sound discretion of the trial court, and "our inquiry of necessity must turn to whether an abuse of discretion was committed." *Commonwealth v. Strong, supra*, citing *Commonwealth v. Simon*, 432 Pa. 386, 248 A.2d 289 (1968). See also: *Commonwealth v. D'Amato, supra*, 514 Pa. at 491, 526 A.2d at 310; *Commonwealth v. Ellis*, 398 Pa.Super. 538, 560, 561, 581 A.2d 595, 606 (1990) (en banc).

The first portion of the prosecutor's closing argument to which appellant objected was as follows:

Let's think about something else. The defense attorney in his opening statement indicated he would present two little girls to say how Keia said to them this is all a lie. He said he would present Tamika and he said he would present Rashanna. Well Rashanna, ladies and gentlemen, never showed up to testify, as far as I can see.

MR. MAAS: Objection, Your Honor.

THE COURT: Sustained.

MS. PERLIS: Rashanna did not testify, and I suggest to you the reason for that. The reason is that with Angela Jubilee and Tamika Jubilee testifying he got two different stories.

MR. MAAS: I object. She was available—

THE COURT: Sustained.

MR. MAAS: —to the Commonwealth.

MS. PERLIS: I suggest that would have been a third, would have been a third story.

I also suggest, ladies and gentlemen—

MR. MAAS: I object to that. The Commonwealth could have called that witness.

We find no abuse of discretion in the trial court's denial of a defense motion for a mistrial on the basis of the above quoted remarks of the prosecuting attorney. Where the prosecutor merely challenged the defendant's failure to produce a witness who allegedly would have provided favorable testimony, the comments were not improper. See: *Commonwealth v. Yarris,* 519 Pa. 571, 597, 549 A.2d 513, 526 (1988), *cert. denied,* 491 U.S. 910, 109 S.Ct. 3201, 105 L.Ed.2d 708 (1989); *Commonwealth v. Johnson,* 457 Pa. 554, 561–562, 327 A.2d 632, 636–637 (1974); *Commonwealth v. Womack,* 307 Pa.Super. 396, 406, 453 A.2d 642, 647 (1982). In this case, in any event, the trial court sustained objections to the prosecuting attorney's remarks. The denial of the defense motion for additional relief in the nature of a mistrial was not error.

Later remarks by the prosecuting attorney present a different and more difficult issue. She said:

Furthermore, [the victim] went and talked to a judge once before, and you heard the defense attorney cross-examine her about some minor points that she said differently to the first judge than she did to you. Well, in that entire packet from that first hearing you can assume that all the rest of it was consistent, because if it wasn't, the defense attorney would have picked it out.

MR. MAAS: Objection, Your Honor.

THE COURT: Sustained.

MS. PERLIS: So, in other words, what she said at the preliminary hearing was consistent with what she said at the trial.

MR. MAAS: Objection, Your Honor.

THE COURT: Overruled.

Appellant argues that by these comments the prosecutor improperly bolstered the victim's credibility by referring to facts not in evidence.

It is well settled that "[t]he district attorney must limit [her] remarks to facts in evidence and legitimate inferences therefrom." *Commonwealth v. Anderson*, 490 Pa. 225, 229, 415 A.2d 887, 888 (1980). See also: *Commonwealth v. D'Amato, supra* 514 Pa. at 489, 526 A.2d at 309; *Commonwealth v. Barren*, 501 Pa. 493, 498, 462 A.2d 233, 235 (1983); *Commonwealth v. Glass*, 486 Pa. 334, 347, 405 A.2d 1236, 1243 (1979). Here, the record of the preliminary hearing was not in evidence. Therefore, it was improper for the prosecuting attorney to suggest to the jury that the victim's trial testimony was consistent with the testimony which she had given at the preliminary hearing. By this statement the prosecuting attorney attempted improperly to bolster the victim's credibility by asserting that she had previously told a consistent story. Where, as here, the central issue to be decided by the jury was the credibility of the complaining witness and that witness's testimony had been attacked by evidence of inconsistent statements which she had made, a reviewing court cannot conclude with certainty that the prosecutor's improper comments regarding the consistency of the victim's trial testimony with her preliminary hearing testimony did not influence the jury's verdict. The prosecuting attorney's conduct was improper. She could not bolster the testimony of a Commonwealth witness by referring to facts which had not been introduced into evidence at trial.

The law regarding the admissibility of a witness's prior consistent statements has been summarized by the Supreme Court as follows:

> Because such statements are hearsay, their use as a means to rehabilitate the credibility of an impeached witness' testimony is severely limited; and such statements are admissible only if it is alleged that the witness' present testimony is recently fabricated or a result of

corrupt motives. *Commonwealth v. Gaddy*, 468 Pa. 303, 317, 362 A.2d 217, 223 (1976). Furthermore, evidence of such statements is "admissible only in rebuttal and then only for the purpose of showing that that which the witness now testifies to has not been recently fabricated". *Commonwealth v. Gaddy*, 468 Pa. 303, 316, 362 A.2d 217, 223 (1976), quoting *Commonwealth v. Wilson*, 394 Pa. 588, 602-03, 148 A.2d 234, 242 (1959), *cert. denied*, 361 U.S. 844, 80 S.Ct. 97, 4 L.Ed.2d 82 (1959). As a further restriction upon admissibility the statement must have been made at a time "before its ultimate effect on the question trying could have been foreseen" *Craig v. Craig*, 5 Rawles 91, 97-98 (1835). In more recent times this court has interpreted this caveat to mean before "any corrupt motive has arisen" *Commonwealth v. Gaddy*, *supra*, 468 Pa. at 317, 362 A.2d at 223 (1976). See also *Risbon v. Cottom*, 387 Pa. 155, 127 A.2d 101 (1956); *Keefer v. Byers*, 398 Pa. 447, 159 A.2d 477 (1960); *Commonwealth v. Vento*, 410 Pa. 350, 189 A.2d 161 (1963).

If one testifies that they did a certain thing at a given time, they may be challenged that they said something different before. Such is impeachment by a prior contradictory statement. Ordinarily, that one has always said the same thing is subsumed in their testimony and need not be buttressed by evidence of prior consistency, unless that consistency, by allegation of recent fabrication is challenged. When challenged, evidence of prior and continued consistency may be offered. Evidence of prior consistency, absent such challenge is not required and is essentially cumulative and repetitious. To regularly allow testimony of prior consistency may easily become a device to merely augment the credibility of witnesses by others.

*Commonwealth v. Hutchinson*, 521 Pa. 482, 487-488, 556 A.2d 370, 372 (1989). See also: *Commonwealth v. Gaddy*, 468 Pa. 303, 316, 362 A.2d 217, 223 (1976); *Commonwealth v. Wilson*, 394 Pa. 588, 602-603, 148 A.2d 234, 242 (1959), *cert. denied*, 361 U.S. 844, 80 S.Ct. 97, 4 L.Ed.2d 82 (1959);

*Commonwealth v. Gore,* 262 Pa.Super. 540, 549–550, 396
A.2d 1302, 1306–1307 (1978); Packel and Poulin, Pennsylva-
nia Evidence, § 801.6 (1987). "The admission of such conso-
nant statements is a matter to be decided by the trial judge
in the exercise of his discretion in light of the character and
degree of impeachment." *Commonwealth v. Gore, supra,*
262 Pa.Superior Ct. at 550, 396 A.2d at 1307. See also:
*Commonwealth v. Cruz,* 489 Pa. 559, 566, 414 A.2d 1032,
1036 (1980); *Commonwealth v. Sanders,* 380 Pa.Super. 78,
104, 551 A.2d 239, 252 (1988).

However, prior consonant statements of a witness are not
admissible to bolster the witness' credibility where the
witness has admitted that he or she made prior inconsistent
statements. In *Commonwealth v. White,* 340 Pa. 139, 16
A.2d 407 (1940), the Supreme Court affirmed the exclusion
of a prior consistent statement under such circumstances,
reasoning as follows:

> Here the trial judge's exclusion of the prior and allegedly
> consonant statements was entirely right; to have allowed
> them would not only have represented an unwise exercise
> of the discretion vested in him in such matters, but would
> have constituted reversible error. For, as he well states
> in his opinion for the court below: "The exception of the
> hearsay rule which permits evidence of such consonant
> statements to be received under some circumstances rests
> altogether upon the theory that they support the credit of
> a witness who has denied that he ever made the inconsist-
> ent statement of which proof has been offered. Before
> such consonant statements can be admissible at all there
> must be an issue as to whether the witness has in fact
> made an inconsistent statement or not. Where as in the
> case of this defendant and his witnesses, the self-contra-
> diction is conceded, it remains as a damaging fact, and is
> in no sense explained away by the consistent statement.
> The witness must have been false at one time or the other
> and it is no restoration of his credit to show that at still
> other times he has made statements in accordance with
> his present testimony. No matter how many times the

consistent story may have been told, the inconsistent one is not erased. An inquiry to ascertain which of the two different statements has been made most frequently by the witness would furnish no means by which the credit due his testimony could be satisfactorily determined." See *Stewart v. People*, 23 Mich. 63, 9 Am.Rep. 78; Wigmore on Evidence, 3rd Ed., section 1126.

*Id.* 340 Pa. at 143–144, 16 A.2d at 409. See also: *Risbon v. Cottom*, 387 Pa. 155, 163, 127 A.2d 101, 105 (1956); *Parnell v. Taylor*, 266 Pa.Super. 74, 80–81, 403 A.2d 100, 102–103 (1979); *Commonwealth v. Bartell*, 184 Pa.Super. 528, 542–543, 136 A.2d 166, 174–175 (1957).

The Commonwealth argues that the holding of the Supreme Court in *White* has been restricted by language contained in an en banc opinion of the Superior Court in *Commonwealth v. Willis*, 380 Pa.Super. 555, 552 A.2d 682 (1988). Therefore, it argues, there is no longer a clear rule excluding prior consonant statements where a prior inconsistent statement has been admitted by the witness. We are unable to accept the Commonwealth's argument. In the first place, *Willis* was a plurality opinion in which a majority of the court did not join. That decision, therefore, lacks precedential value. More importantly, the facts in the instant case are on all fours with and cannot be distinguished from those in *White*. *White*, therefore, is controlling, and we are bound to follow the Supreme Court's decision.

■ Here, the victim admitted that she had initially told her mother that she had not been assaulted. She explained that she had done so because of her fear of appellant. The admission of the statements detailing the assault which the victim made to two social workers and a police officer, therefore, could not properly be offered to deny the fact that the victim had made inconsistent statements. Similarly, the testimony of the two social workers and the policeman did not explain why the victim had given inconsistent statements. Instead, the Commonwealth used these witnesses to provide testimony which was cumulative of the

victim's testimony and thereby intended to bolster the victim's credibility by demonstrating that she had told a version of events consistent with her trial testimony more often than she told the inconsistent version of events. Such a use of prior consonant statements exceeds the limited purpose for which they are allowed. When the trial court allowed the prior consonant statements for such a purpose, it abused its discretion and committed an error of law.

■ After the Commonwealth had rested its case, the defense called as its first witness, Sandra Jubilee. She was the mother of appellant and of Lydia Jubilee, the victim's mother. She was also the grandmother of the victim.[2] Sandra Jubilee testified that the victim's mother had threatened to bring charges against appellant unless she, Sandra, gave her money. The witness also said that the relationship with her daughter had deteriorated, that her daughter had been constantly harassing her and that her daughter had threatened to "fix" her through appellant. On cross-examination, the Commonwealth asked Sandra Jubilee about a letter she had written to her daughter prior to trial. When the attorney for the Commonwealth asked the witness to read the letter to the jury, defense counsel objected and the following discussion ensued at sidebar:

THE COURT: That lady has come close to interfering with the administration of justice. She's totally trying to suborn this trial.

MR. MAAS: Your Honor, she has denied doing that, for one thing, and as far as this note is concerned, and I have no idea what else is in that envelope. But—

MS. PERLIS: I'll be happy to show it to counsel. I just got it myself.

MR. MAAS: No more than anybody else's opinion can be introduced as to whether he is guilty or not, to have that note read talking about his sins—

---

**2.** The witness was employed by the Philadelphia Court of Common Pleas as a juvenile probation officer.

THE COURT: That's right. And she's the one talking about he is such a good guy, then she contradicts that by this note. I am going to let it in.

MR. MAAS: I think that is mistrial material.

MS. PERLIS: Absolutely not.

THE COURT: I don't think so. It is her note she wrote and she testified as to not favoring him and not trying to punish Lydia for bringing this case to court.

MS. PERLIS: Absolutely.

MR. MAAS: Your Honor, as far as requests that she might have made of Lydia, that is one thing. But as to her beliefs as to whether he has sinned, that goes to her opinion as to his guilt. I was unaware she had wrote that or said that, but certainly that is the same thing as putting her on the stand and saying, Do you think he is guilty. It is inadmissible.

THE COURT: I'll permit it. And I am totally outraged that this lady conducted herself in this manner. This lady, she ought to be fired and brought to trial herself for trying to subvert this trial. I'll admit it.

When the defense objection was denied, the witness read the contents of her letter into evidence as follows:

A. "Can you find it in your heart to ask the judge to have mercy on Dennis for his sins. Dennis did a lot of wrong while he was on drugs and getting drunk. He is now suffering in ways you cannot believe. He'll pay for his sins the rest of his life, should he stay in jail for 25 years. I know God is punishing me too for my sins."

When asked to explain the purpose of her letter, the witness responded as follows:

A. The purpose for delivering that and other material was because I wanted Lydia to see what I really felt in my heart for her, that it was not hate. I wanted to clear myself of having been accused of trying to take her children from her. That is why I gave her a copy of the actual letter that I had written to DHS. That was the reason. I wanted Lydia to know that regardless of what,

I loved her, I still cared for her and that I thought that she should have some mercy in her heart.

Q. Miss Jubilee, if I may, I am going to read the second to last sentence on this note. "He'll pay for his sins the rest of his life, should he stay in jail for 25 years."

What was the purpose of that line in this note to Lydia Jubilee?

A. The purpose of that line was to make her think of what she was really doing.

Q. So, in other words, the purpose of that line in that note was to convince Lydia to drop the charges; isn't that true?

A. I had never asked her to drop the charges. The purpose was to make her aware is these things true or is she just trying to punish people.

Q. Ma'am, you never talked to Keia about this, have you?

A. I have not.

Q. You don't believe Keia and you haven't even spoken to her, do you?

A. I was told not to approach them.

Q. Ma'am, your purpose in delivering this envelope was to subvert this trial, was it not?

A. No, I would never try to do that.

MS. PERLIS: No further questions.

THE WITNESS: My letter states that I had no—

THE COURT: Any redirect?

THE WITNESS: No authority on not trying to pursuade [sic] or change anybody's opinion. I wanted my daughter to know that regardless, I loved her. I never tried to hurt her. I never tried to take her children from her. And I believe that that is why she was trying to hurt me, because she thought I wanted to take custody of her children.

Appellant contends that this line of cross-examination was improper because the letter could only be interpreted as an expression of opinion that appellant was in fact guilty.

The letter also implicated appellant in other conduct involving drinking and drug abuse. The Commonwealth argues, on the other hand, that the cross-examination was proper to rebut the inference raised by the witness on direct examination that she believed her daughter had induced the victim to bring false charges against appellant.

It is well settled that "[t]he scope and limits of cross-examination are largely within the discretion of the trial court and the actions pertaining thereto will not be reversed in the absence of a clear abuse of discretion or error of law." *Commonwealth v. Perdue*, 387 Pa.Super. 473, 485, 564 A.2d 489, 495 (1989). See also: *Commonwealth v. Buehl*, 510 Pa. 363, 383, 508 A.2d 1167, 1179 (1986), *cert. denied*, 488 U.S. 871, 109 S.Ct. 187, 102 L.Ed.2d 156 (1988); *Commonwealth v. Fried*, 382 Pa.Super. 156, 165, 555 A.2d 119, 123 (1989).

As a general rule, it is elementary that a party is entitled on cross-examination to bring out every circumstance relating to a fact which an adverse witness is called to prove. *Peters v. Shear*, 351 Pa. 521, 41 A.2d 556 (1945). In criminal cases, the right of cross-examination extends beyond the subjects testified to in direct testimony and includes the right to examine a witness on any facts tending to refute inferences or deductions arising from matters testified to on direct examination *Commonwealth v. Lopinson*, 427 Pa. 284, 234 A.2d 552 (1967), vacated on other grounds, 392 U.S. 647, 88 S.Ct. 2277, 20 L.Ed.2d 1344 (1968); In *Kaplan v. Loev*, 327 Pa. 465, 194 A. 653 (1937), *cert. denied*, 302 U.S. 766, 58 S.Ct. 477, 82 L.Ed. 595, we cited 70 C.J.S. 813, 1020 with approval as follows:

As bearing on his credibility, a witness may be cross-examined as to inconsistent acts or conduct generally, acts or conduct inconsistent with his testimony, or omissions on his part which tend to discredit him.

327 Pa. at 467, 194 A. 653.

*Commonwealth v. Green*, 525 Pa. 424, 454, 581 A.2d 544, 558–559 (1990). See also: *Commonwealth v. Snoke*, 525 Pa. 295, 305, 580 A.2d 295, 300 (1990). However,

> 'it would not be proper under the cover of this principle to permit the vehicle of cross-examination to be used to convey to the jury a circumstance highly prejudicial to one of the parties which could not directly be placed before the trier of fact. Such an impropriety in the use of cross-examination should be within the control of the trial judge, in the exercise of his impartial judicial discretion.'

*Commonwealth v. Green, supra* 525 Pa. at 455, 581 A.2d at 559, quoting *Kaplan v. Loev*, 327 Pa. 465, 467–468, 194 A. 653, 654–655 (1937), *cert. denied*, 302 U.S. 766, 58 S.Ct. 477, 82 L.Ed 595 (1938).

This is not a simple issue. There can be no doubt that the statements by appellant's mother in the letter were damaging to the defense. However, the charges of fabrication made by the witness during direct examination were serious, and the contradictions contained in the letter were relevant to aid the jury in assessing the witness's credibility. After careful review, therefore, we conclude that the trial court did not abuse its discretion when it allowed the Commonwealth to introduce the contents of the letter.

Nevertheless, because of other errors, a new trial is required.

Reversed and remanded for a new trial. Jurisdiction is not retained.

KELLY, J., files a concurring opinion.

KELLY, Judge, concurring.

I agree that the prosecutor committed reversible error in referring to pre-trial testimony that was not introduced at trial to support argument during closing. However, for the reasons set forth in *Commonwealth v. Willis*, 380 Pa.Super. 555, 552 A.2d 682 (1988), I would not find that the trial court erred in allowing prior consonant statements of the

child witness to be introduced to explain a reason for the child's prior inconsistent statement, *i.e.*, because the child *feared* appellant's threats. Hence, I concur in the result.