J-S15010-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| COREY LEE HARTLEB | : | |
| | : | |
| Appellant | : | No. 1463 WDA 2024 |

Appeal from the PCRA Order Entered October 29, 2024
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0002127-2020

BEFORE:   OLSON, J., SULLIVAN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                    **FILED:  June 24, 2025**

Appellant, Corey Lee Hartleb, appeals from the October 29, 2024 order entered in the Court of Common Pleas of Erie County that dismissed his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The record demonstrates that, on September 16, 2021, a jury convicted Appellant of aggravated assault – serious bodily injury, aggravated assault – bodily injury with a deadly weapon, and possessing instruments of crime.[1]  Appellant's convictions stemmed from a fight that occurred outside a bar on the evening of January 31, 2020, in which Appellant stabbed the victim

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 2702(a)(4), and 907(b), respectively.

in the neck with a knife. The trial court imposed an aggregate sentence of 6 to 12 years' incarceration to be followed by 3 years' probation.

This Court affirmed Appellant's judgment of sentence on March 6, 2023, and our Supreme Court denied Appellant's petition for allowance of appeal on August 22, 2023. **Commonwealth v. Hartleb**, 496 A.3d 577, 2023 WL 2359812, at *1 (Pa. Super. filed Mar. 6, 2023) (unpublished memorandum), *appeal denied*, 303 A.3d 709 (Pa. 2023). Appellant's judgment of sentence became final on November 20, 2023, upon expiration of the time in which to seek discretionary review with the Supreme Court of the United States. U.S. Sup. Ct. R. 13(1) (stating, "A petition for *writ* of *certiorari* seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after the entry of the order denying discretionary review."); **see also** 42 Pa.C.S.A. § 9545(b)(3) (stating, "a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review").

On April 11, 2024, Appellant filed *pro se* a timely PCRA petition, his first. In his *pro se* petition, Appellant raised claims of, *inter alia*, ineffective assistance of trial counsel. On April 12, 2024, PCRA counsel was appointed to represent Appellant.

On August 12, 2024, PCRA counsel filed a statement in support of one of the ineffectiveness claims Appellant raised *pro se*. Counsel requested that

the PCRA court grant Appellant collateral relief based upon this claim.[2] On September 4, 2024, the PCRA court filed a notice of its intent to dismiss Appellant's petition without a hearing pursuant to Pennsylvania Rule of Criminal Procedure 907. Appellant did not file an objection. On October 29, 2024, the PCRA court dismissed Appellant's petition. This appeal followed.[3]

Appellant raises the following issue for our review:

Whether the [PCRA] court committed legal error and abused its discretion in failing to grant PCRA relief based upon the claim that the Commonwealth[,] during the course of conducting cross-examination of [Appellant] at trial[, engaged] in "burden-shifting" suggestive commentary and that [trial] counsel was ineffective in failing to assert a timely objection thereto and preserve the claim on direct appeal or seek a mistrial or challenge the curative efforts undertaken by the trial court as ineffectual?

Appellant's Brief at 2 (extraneous capitalization omitted).

Proper appellate review of a PCRA court's dismissal of a petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." **Commonwealth v. Miller**,

---

[2] Counsel's statement was a supplement to a broader document, filed with the PCRA court, titled "statement in support of finding of no-merit." In the filing, PCRA counsel asserted that the claims raised in Appellant's *pro se* petition were without arguable merit, with the exception of the ineffectiveness claim involving trial counsel's failure to object to certain aspects of the Commonwealth's cross-examination of Appellant at trial. In the supplemental portion of the filing, counsel asserted that Appellant's ineffectiveness claim concerning the Commonwealth's cross-examination merited collateral relief.

[3] Both Appellant and the PCRA court complied with Pennsylvania Rule of Appellate Procedure 1925. In its Rule 1925(a) opinion, the PCRA court stated that it was relying on the opinion that accompanied its Rule 907 notice.

102 A.3d 988, 992 (Pa. Super. 2014) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (citations omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." *Commonwealth v. Hickman*, 799 A.2d 136, 140 (Pa. Super. 2002) (citation omitted). In contrast, we review the PCRA court's legal conclusions *de novo*. *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*), *appeal denied*, 101 A.3d 785 (Pa. 2014).

In the case *sub judice*, Appellant asserts that "some of the Commonwealth's questions [posed] during the course of cross-examination of [Appellant] concerning the absence of corroborating witnesses for his version of events improperly shifted the burden of proof" to Appellant. Appellant's Brief at 4. Appellant contends that trial counsel was ineffective for failing to object to the Commonwealth's questions regarding the absence of a corroborating witness known by the nickname "Baby J." *Id.* at 5. Appellant acknowledges that trial counsel objected to the Commonwealth's questions regarding the absence of Appellant's mother as a corroborating witness and the Commonwealth ceased its line of questioning thereafter. *Id.* Appellant contends, however, that trial counsel was ineffective for failing to seek further relief, *i.e.*, a motion for a mistrial or a motion to strike the testimony, regarding the Commonwealth's line of questioning and, instead, accepted the

trial court's corrective jury instruction reiterating that the burden of proof is always on the Commonwealth and that Appellant was under no obligation to present evidence. *Id.* at 5-6. Appellant asserts that trial counsel "did not object to the adequacy of [the corrective] instruction or contend that any further instruction as to this issue was warranted." *Id.* at 6. Appellant argues that, as a result of trial counsel's failure to lodge certain objections, this Court previously held that Appellant waived a claim challenging the Commonwealth's cross-examination of Appellant that, according to Appellant, shifted the burden of proof to Appellant. *Id.*; *see also Hartleb*, 296 A.3d 577, 2023 WL 2359812, at *5 (finding that, "Appellant's claim of error concerning the Commonwealth's cross-examination questions is [] waived").

Not only does Appellant assert that trial counsel failed to object to the Commonwealth's improper "burden-shifting" line of inquiry, Appellant also maintains that he suffered prejudice because of the Commonwealth's actions at trial. Appellant's Brief at 6. Appellant contends that "[t]he prejudice arising from this line of [cross-]examination was immediate and not subject to remediation even through the jury instruction." *Id.* Appellant asserts that "[t]he lasting taint and impact on the trial process commanded [a request for] a mistrial, which [trial] counsel failed to [pursue]." *Id.* Appellant argues that "the commentary raised by the Commonwealth in its cross-examination implicates the bedrock principle of our rule of law and justice system that the accused bears no burden of proof while the [Commonwealth] assumes [the] exclusive obligation to prove guilt beyond a reasonable doubt." *Id.* at 7.

Appellant asserts that, based on trial counsel's failure to object to the Commonwealth's burden-shifting questions on cross-examination, to request a mistrial as a result of the Commonwealth's questions, and to challenge the adequacy of the jury instruction, the PCRA court erred in denying his request for collateral relief. *Id.*

"It is well-established that counsel is presumed effective[.]" *Commonwealth v. Koehler*, 36 A.3d 121, 132 (Pa. 2012), *citing Strickland v. Washington*, 466 U.S. 668, 687-691 (1984). To plead and prove a claim of ineffective assistance of counsel, "a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective[ly] reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." *Commonwealth v. Stewart*, 84 A.3d 701, 706 (Pa. Super. 2013) (*en banc*), *appeal denied*, 93 A.3d 463 (Pa. 2014). "A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any of these prongs." *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010).

> With regard to the reasonable basis prong, we do not question whether there were other more logical courses of action which counsel could have pursued[. R]ather, we must examine whether counsel's decisions had any reasonable basis. We will conclude that counsel's chosen strategy lacked a reasonable basis only if [the petitioner] proves that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To establish the prejudice prong, the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness.

*Commonwealth v. Hanible*, 30 A.3d 426, 439 (Pa. 2011) (citations and quotation marks omitted).

In the opinion accompanying its Rule 907 notice, the PCRA court explained the reasoning behind its denial of Appellant's ineffective assistance of trial counsel claim as follows:

> [Appellant's] claims that trial counsel failed to object to the Commonwealth's statements regarding the absence of "Baby J" and [Appellant's] mother are meritless. The record reflects that trial counsel did request a sidebar regarding the alleged burden shifting [by] the Commonwealth. Furthermore, the Commonwealth's comments regarding the absence of the two individuals does not constitute burden-shifting.
>
> Moreover, the [trial] court did properly instruct the jury as to the Commonwealth's burden of proof. Therefore, this issue is not of arguable merit and trial counsel cannot be found to be ineffective for not pursuing it.

PCRA Court Opinion, 9/4/24, at 4 (citation and extraneous capitalization omitted).

The record demonstrates that, as part of its cross-examination of Appellant, the Commonwealth inquired as to whether, or not, Appellant had imbibed a "mixed drink," or a cocktail containing spirits or liquor, on the evening of the incident.[4] During the playing of a video surveillance recording,

---

[4] During direct examination, Appellant maintained that as an employee of the bar, he was permitted to consume a maximum of three draft beers during a shift and that he had consumed only two draft beers within a two-hour period prior to the incident. N.T., 9/15/21, at 92.

which depicted events occurring inside the bar on the evening of the incident, the following exchange occurred:

> [Commonwealth:]      The bartender is] filling up some liquor for you, isn't she?
>
> [Appellant:]      Yes, she is, but that's not for me, sir.
>
> [Commonwealth:]      What's she doing with that?
>
> [Appellant:]      She's giving it to me, but that's not my drink. I was getting that for Baby J.

N.T., 9/15/21, at 129. Appellant claimed that he drank only draft beer on the evening of the incident. *Id.* Appellant explained that the "mixed drink" the bartender gave to Appellant, as shown in the video surveillance recording, was a drink "Baby J" ordered from Appellant, which Appellant delivered to "Baby J" outside the bar in the parking lot. *Id.* at 132. When asked about the video surveillance recording showing Appellant holding "the drink" in his hand, Appellant denied drinking the beverage and claimed that the cup in his hand was empty. *Id.* at 131-132. In an effort to discern whether, or not, he consumed a spirit-based beverage on the evening of the incident, the following dialogue occurred:

> [Commonwealth:]      Just so we're on the same page, you order a drink, you carry it outside, you pay for it?
>
> [Appellant:]      Yes.
>
> [Commonwealth:]      Correct? You then enter [the bar] eight minutes later with [the cup] empty?
>
> [Appellant:]      Her old, empty cup, yes.

| [Commonwealth:] | So she got, like, table service from you, huh? |
| --- | --- |
| [Appellant:] | She's a friend. She asked me. I was being nice. |
| [Commonwealth:] | But we don't have Baby J here. We just have to take your word for that? |
| [Appellant:] | I mean, it's not against the law to give somebody a beer when they ask if they're your friend. |
| [Commonwealth:] | It's against the law to lie under oath though. |
| [Appellant:] | I'm not lying, sir. |
| [Commonwealth:] | We have to take your word because we can't ask Baby J, correct? |
| [Appellant:] | I guess. |

*Id.* at 132-133.

Upon review, we concur with the PCRA court, and the record supports, that Appellant's ineffectiveness claim based on trial counsel's failure to object to the Commonwealth's reference to "Baby J" lacked arguable merit. The video surveillance recording showed that Appellant obtained a cocktail from the bartender, went outside the bar with the cocktail, and returned several minutes later with an empty glass. Appellant denied drinking the cocktail and, instead, testified that the cocktail was consumed by "Baby J." Appellant maintained that he only consumed two draft beers while working on the evening of the incident. The Commonwealth attempted to challenge the credibility of Appellant's testimony by pointing out that Appellant did not present "Baby J" as a witness to corroborate his version of events. When read

within the context of the cross-examination, and after Appellant placed his credibility as to the consumption of a liquor-based beverage at issue, we do not find the Commonwealth's reference to the lack of a corroborating witness to be improper. *See Commonwealth v. Yarris*, 549 A.2d 513, 526 (Pa. 1988) (holding that, the Commonwealth's question regarding a defendant's failure to produce a witness referenced by the defendant was not improper but, rather, merely challenged the defendant's credibility by highlighting the defendant's failure to produce a corroborating witness), *cert. denied*, 491 U.S. 910 (1989); *see also Commonwealth v. Jubilee*, 589 A.2d 1112, 1114 (Pa. Super. 1991) (stating, "[w]here the [Commonwealth] merely challenged the defendant's failure to produce a witness who allegedly would have provided favorable testimony, the comments were not improper"), *appeal denied*, 600 A.2d 534 (Pa. 1991); *Commonwealth v. Levengood*, 277 A.3d 1170, 2022 WL 1265766, at *9 (Pa. Super. filed Apr. 28, 2022) (unpublished memorandum) (stating, "if the defendant does choose to testify, the Commonwealth is not prohibited from offering fair commentary on the credibility of the defendant"), *appeal denied*, 287 A.3d 456 (Pa. 2022). Therefore, Appellant's claim predicated upon trial counsel's failure to object to the "Baby J" reference by the Commonwealth is without arguable merit.[5]

---

[5] Moreover, Appellant failed to demonstrate how the reference to "Baby J" was prejudicial to his conviction. At the heart of the conviction is the fact that Appellant stabbed the victim in the neck with a knife during a physical encounter. Whether, or not, Appellant imbibed liquor-based beverages on the

During further cross-examination of Appellant, the Commonwealth inquired about the events that occurred after the incident, and in particular Appellant's continued presence and employment at the bar, as follows:

[Commonwealth:]     Y]ou're still working [at the bar], right?

[Appellant:]     No, I'm not.

[Commonwealth:]     So –

[Appellant:]     After the fight, I was not working.

[Commonwealth:]     So my question is[,] you still have to help at the bar?

[Appellant:]     After that fight, I basically - I was not going back in that bar after that situation.

[Commonwealth:]     And you don't call the [bar owner] and let her know or anybody else?

[Appellant:]     My mother called [the bar owner] and told her I was in the hospital.

[Commonwealth:]     Your mother called the [person] responsible for [the video surveillance recording at the bar?]

[Appellant:]     The owner, yes.

[Commonwealth:]     The [person] responsible?

[Appellant:]     Yes, to let her know why I wasn't there.

[Commonwealth:]     And you went to the hospital?

[Appellant:]     Yes.  I went to [the hospital].

[Commonwealth:]     And you said you went to [the hospital] because you heard [that, after the

_____

evening of the incident neither demonstrates, nor refutes, facts that the jury ultimately found established Appellant's guilt.  Accordingly, we fail to perceive any prejudice arising from this claim.

| | incident,] somebody had to go to [a different medical treatment center]? |
|---|---|
| [Appellant:] | Yeah. They said that somebody had a severe, like, pussed[-]up eye, and they said something about a woman getting knocked out or something. |
| [Commonwealth:] | And you found out somebody went to [the other medical treatment center]? |
| [Appellant:] | And I had no idea who it was, so I wasn't trying to be in the middle of anybody because the people that were out fighting, they were all with that group. |
| [Commonwealth:] | My question is if you just [ran] away[, hid,] and [didn't] tell anybody, including the police, [about the incident,] how did you find out that people were going to the [medical treatment center] and that people were severely injured? |
| [Appellant:] | Because my mother got a call about a big fight. |
| [Commonwealth:] | So a fight happens? |
| [Appellant:] | Yes. |
| [Commonwealth:] | And when a fight happens at [the bar], they call your mother? |
| [Appellant:] | I was working, so she makes sure that she knows where we're at at all times. |
| [Commonwealth:] | Okay. Now, after - in the days afterwards, you don't go to the police either? |
| [Appellant:] | No. |
| [Commonwealth:] | You got jumped by ten guys and you found - three to ten [guys]. You find that to be such a normal occurrence that you don't think the police need to know about it at all? |

| | |
|---|---|
| [Appellant:] | Like I said, I've had this happen to me multiple times, and normally it's over after its done. |
| [Commonwealth:] | But you go to [the bar owner] and say I got jumped by three to ten guys at your bar while I was working? |
| [Appellant:] | I never contacted – I never contacted [the bar owner] and told her that. |
| [Commonwealth:] | You never said, look, I'm quitting. This is why I'm quitting. Sorry, [bar owner]. Nothing against you. |
| [Appellant:] | No. It's not an everyday job. It's only whenever they host mainly biker nights and all that, and that was a biker night, but at nighttime, that's when they really need the security. |
| [Commonwealth:] | But you don't tell [the bar owner] why you left work after she asked you to help out? |
| [Appellant:] | I didn't have to. My mother did. |
| [Commonwealth:] | Your mother did that? |
| [Appellant:] | Yes. |
| [Commonwealth:] | But we have to take your word for it, once again, because your mother is not here? |
| [Appellant:] | No. |
| [Commonwealth:] | Okay. Your mother who knows where you are at all times, checks in on you? |
| [Appellant:] | Yes. |
| [Commonwealth:] | And she's not at this trial? |
| [Appellant:] | No. |
| [Commonwealth:] | Okay. |
| [Appellant:] | She knows I'm here though. |
| [Commonwealth:] | Understood. |

N.T., 9/15/22, at 146-149. At this point, defense counsel requested a sidebar, at which the following discussion occurred:

[Defense Counsel:]   So what [the Commonwealth] just said, essentially, [Appellant's mother] should be available for the defense to be put on as a witness to prove [Appellant's] story, which goes against his presumption of innocence, goes against the burden of us not having to present any witnesses or do anything, and so I really don't know how to fix that situation.

[Commonwealth:]   Once the defendant testifies, we can certainly attack his credibility.

[Defense Counsel:]   Sure.

[Commonwealth:]   That credibility involves he's telling a story that's completely uncorroborated and has nothing to support it other than his word.

[Defense Counsel:]   I have the jail calls.

[Commonwealth:]   Okay.

[Defense Counsel:]   But the thing is -

[Commonwealth:]   Those are still his word.

[Defense Counsel:]   We don't need to call witnesses, and he is presumed innocent until proven guilty.

[Commonwealth:]   I'm going to credibility. I'm saying the mother is here all the time. She's not even here at a trial where he's charged with attempted homicide. I think that goes to his credibility about his mother.

[Trial Court:]   Why don't you move from the mother at this time. During jury instructions, I will obviously say that the burden is always on the [Commonwealth] to prove everything,

> so I think that will cover it, but move on from the mother.

[Commonwealth:] I think I'm pretty much done.

*Id.* at 149-151.

During its jury charge, the trial court instructed the jury, in pertinent part, as follows:

> It is a fundamental principle of our system of criminal law that the defendant is presumed to be innocent. Furthermore, the defendant is presumed innocent throughout the trial unless and until you conclude based on careful and impartial consideration of the evidence that the Commonwealth has proven him guilty beyond a reasonable doubt. Now, it is not the defendant's burden to prove that he is not guilty. Instead, it is the Commonwealth that always has the burden of proving each and every element of the crimes charged and that the defendant is guilty of those crimes beyond a reasonable doubt.

> A person accused of a crime is not required to present evidence or prove anything in his own defense. Although the Commonwealth has the burden of proving that the defendant is guilty, this does not mean that the Commonwealth must prove its case beyond all doubt or to a mathematical certainty. A reasonable doubt is a doubt that would cause a reasonably careful and sensible person after due deliberations to hesitate before acting upon a matter of importance, in his or her own affairs.

> . . . The Commonwealth has the burden of proving the defendant guilty beyond a reasonable doubt. If the Commonwealth's evidence meets its burden, then the defendant is no longer presumed innocent, and you should find him guilty. On the other hand, if the Commonwealth's evidence does not meet its burden, you must find the defendant not guilty.

> . . .

> In this case the defendant took the stand as a witness. In considering the defendant's testimony, you're to follow the general instructions I just gave you for judging the credibility of any witness. You should not disbelieve the defendant's testimony merely because he is the defendant. In weighing his testimony,

- 15 -

however, you may consider the fact that he has a vital interest in the outcome of this trial.

You may take the defendant's interest into account just as you would take into account the interest of any other witness along with all the other facts and circumstances bearing on credibility in making up your mind [about] what weight his testimony deserves.

N.T., 9/16/21, at 10-12, 16-17.

Upon review, we concur with the PCRA court, and the record supports, that Appellant's ineffectiveness claim based on trial counsel's failure to object to the Commonwealth's reference to Appellant's mother lacked arguable merit and did not prejudice Appellant. By testifying, Appellant placed at issue his credibility as to how he learned that someone had been severely injured and taken to a certain medical treatment center that Appellant then avoided when seeking his own medical treatment. Appellant also placed at issue his version of events as to how the bar owner learned that Appellant quit his job at the bar. In both instances, the alleged source of the information was Appellant's mother who, according to Appellant, learned of the bar fight and the patrons' injuries and subsequent medical treatment and then informed the bar owner that Appellant would no longer work at the bar. The Commonwealth's question regarding Appellant's failure to call his mother as a corroborating witness pointed the jury to a plausible basis upon which the fact-finder might question Appellant's credibility and did not shift the burden of proof to Appellant. *See Yarris*, 549 A.2d at 526; *see also Jubilee*, 589 A.2d at 1114; *Levengood*, 277 A.3d 1170, 2022 WL 1265766, at \*9. As such, we discern

no abuse of discretion or error of law in the PCRA court's order denying Appellant's petition on this ground.

Moreover, the trial court charged the jury with the instruction that the Commonwealth maintained the burden of proof in establishing Appellant's guilt beyond a reasonable doubt and that Appellant did not have a burden to present evidence or prove his innocence. *See Commonwealth v. Cash*, 137 A.3d 1262, 1280 (Pa. 2016) (reiterating that, "[i]t is well[-]settled that the jury is presumed to follow the trial court's instructions" (citation omitted)); *see also Commonwealth v. Johnson*, 838 A.2d 663, 679 (Pa. 2003) (stating that, a "trial court's cautionary instruction that it was not the defendant's responsibility to call any witnesses, and that the Commonwealth had the burden of proof, adequately cured any prejudice").

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 6/24/2025